[Civ. No. 872. Fourth Appellate District.—October 23, 1931.]

In the Matter of DAMON EDWARDS, a Person Coming Under the Juvenile Court Law. CORNELIA STEVENS, Respondent; ALICE M. AKERS, Appellant.

Everts, Ewing, Wild & Everts, Dan F. Conway and L. N. Barber for Appellant.

Utley and Nuffer for Respondent.

ALLISON, J., *pro tem.*—This is an appeal taken by Alice M. Akers, mother of Damon Edwards, from an order of the Juvenile Court of Imperial County decreeing that said minor be and remain a ward of the Juvenile Court of Imperial County and that said child is an abandoned child, pursuant to the provisions of subdivision 1, section 15 of the Juvenile Court Law of the state of California and further adjudging and decreeing that said minor child be declared free from the custody and control of his parents Mrs. Leon J. Akers and Damon Barrett Edwards, and that said parents be and they are by said decree deprived of the custody and control of said minor.

It appears from the record that the appellant and Damon Barrett Edwards, father of said minor child, separated in 1922, and that appellant secured an interlocutory decree of

divorce from Edwards on the twenty-eighth day of August, 1923, in the Superior Court of Alameda County, and that on the fourth day of September, 1924, a final decree of divorce was entered in said action. Both of said decrees are silent as to the custody of the children of said marriage. At the time of the separation there were four children living, the issue of said marriage, two girls and two boys, and by mutual agreement between the parents the mother took the two girls and the father the two boys. It was agreed between them that the father was to take the two boys and raise them. The boys were twins. During the month of April, 1923, the father of said boys took them to Calexico, Imperial County, California, and on the sixteenth day of September, 1923, placed them in the care and custody of the respondent. At that time the father agreed to pay respondent for their care and maintenance. Pursuant to said agreement he did pay her for the care of the boys for about eight months but has paid nothing more thereon. Respondent continued to keep and care for said children without compensation until the summer of 1925, at which time the father took said boys with him on a short trip to the mountains and on July 12, 1925, respondent received a letter from the father of said boys stating that they were at the home of his brother at Venice, California, and requesting her to come after them, which the respondent did, but returned with the boy Damon only, leaving the other boy at Venice. This letter is the last word that respondent has received from the father. The boy Damon remained in her care and custody until the seventeenth day of December, 1928, at which time the appellant instituted proceedings in the Juvenile Court of Fresno County and obtained custody of the boy Damon and retained his custody until, through a *habeas corpus* proceeding filed in the District Court of Appeal, the minor was restored to the jurisdiction of the Juvenile Court of Imperial County and to the custody of the respondent at El Centro in said county subject to such further orders as may or shall be made by said juvenile court. (*In re Edwards*, 99 Cal. App. 541 [278 Pac. 910, 290 Pac. 591].) On the twelfth day of September, 1926, the respondent caused to be filed in the Juvenile Court of Imperial County a petition to have the minor made a ward of the court pursuant to the provisions of the Juvenile Court

Law.   Pursuant to this petition an order was entered by said juvenile court declaring said minor a ward of the court and adjudging the child to be free from the custody and control of his parents.   This order was thereafter set aside because of irregularity in the proceedings.   Thereafter a petition for a writ of *habeas corpus* was filed in the Supreme Court of the state of California and after hearing thereon the Supreme Court ordered that the minor be restored to the mother, the appellant herein, to be held by her subject to the final determination of the Juvenile Court of Imperial County of the proceedings instituted therein for the purpose of declaring said child to be free from the custody and control of its parents.   (*In re Edwards*, 208 Cal. 725 [284 Pac. 916].)   On the second day of December, 1930, in the proceedings then pending in the Juvenile Court of Imperial County, California, the court made an order declaring said minor to be and remain a ward of the court and adjudged that he was an abandoned child pursuant to the provisions of the Juvenile Court Law and was by said judgment declared to be free from the custody and control of his parents, who were deprived of his custody.   He was ordered to remain in the custody of the probation officer of Imperial County to be placed by said probation officer in the care and custody of his mother, the appellant herein, until the final hearing and determination of this action and until further order of said court.   This appeal is from the order above referred to.

It is first contended that the record contains no evidence which in any way tends to show that the appellant ever at any time entertained any intention to abandon her son.   It appears that the original petition in this proceeding was filed on September 12, 1926.   The petitioner therein and respondent here testified that she had never corresponded with the appellant concerning the minor, had never received any communication of any kind from her while the minor was with her; that she made a number of inquiries to ascertain the mother's whereabouts but was unsuccessful; that she had supported the boy since the father left him with her; that she wrote a number of letters addressed to the appellant, some of which were sent in care of Mr. E. E. Edwards at Sanger, California, but received no reply from the mother. She was unable to say whether any of the letters were mailed

to the mother as early as or prior to September, 1925. The first knowledge she had of the fact that the appellant was endeavoring to recover her child was when she wrote to the probation officer. She could not recall just when that was. She had knowledge from then on that the mother desired to obtain custody of the child and that she might have written as late as 1927. She kept writing because she did not hear from her. Naturally she did not know whether the mother received the letters or not.

Mrs. Akers testified that she separated from the father of the boys in 1922. They had four children the issue of their marriage, two boys, twins, and two girls; that they were living at that time at Huntington Lake, Fresno County; that her husband took the two boys and she kept the two girls. This arrangement was mutual. She obtained a divorce from him and about two months after the interlocutory decree was entered he took the boys away. He did not tell her where he was going. She had no knowledge concerning the whereabouts of the children. She made inquiries of his brothers and sisters but could get no information. The next time that she heard of the boys was through a brother of the boys' father and his wife. They told her that Damon was in Calexico; that Raymond was with another brother of her former husband. They told her that Mrs. Stevens had Damon. That was in 1927. About that time she received a letter from Mrs. Stevens stating that she had been looking for her for a long time trying to locate her; that there was $700 due for the support and maintenance of Damon. The question of the payment of this money was taken up with her by Mr. Dean Edwards, a brother of her former husband, in an effort to arrange for Mr. Edwards to pay the $700, but nothing came of it. She was unable to pay the money herself. She further testified that she did not receive a letter from Mr. Stevens in 1925 nor in 1926, and that the first that she heard of the whereabouts of the boys was in the spring of 1927. She did not know where Matt. Edwards and Dean Edwards were prior to the time that Matt. came to Fresno in the spring of 1927 and revealed the whereabouts of the boys. That she is the fit and proper person to have the custody of the minor. That she can provide for him a suitable home and will send him to school.

The agent of the state department of social welfare, after investigation and a visit to the home of respondent, found that it was a good home and that the respondent is capable of providing proper maintenance, training and education for said child.

On this record the court found that the mother of said child had known of the whereabouts of said minor child for more than one year prior to the filing of the original petition herein (September 12, 1926), and at no time since said minor child has been in the care and custody of said Cornelia Stevens has she communicated with said minor child nor with said Cornelia Stevens and has at no time ever made provision for the support and/or maintenance of said minor child and has at no time since said child has been in the custody of said Cornelia Stevens, ever contributed in any manner to the support and/or maintenance of said child. That the mother of said minor child never made any effort to secure the custody or control of said minor child until long after the filing of the original petition herein and that said minor child has been intentionally abandoned by his parents.

Section 15 of the Juvenile Court Law provides that a person should be declared free from the custody and control of his parents who has been left in the care and custody of another by his parent or parents without any provision for his support or without communication from such parent or parents for a period of one year with intent to abandon said person. When this case was before the Supreme Court on the *habeas corpus* proceedings that court had occasion to discuss the facts to some extent, and made the following comment:

"These facts show that at the time said order of September 11, 1929, was made and for months before, the petitioner, the mother of said minor, a child of only eight years of age, had been endeavoring to secure the care and custody of said minor, but had been prevented from so doing by the respondents. We are not now questioning the right nor the motives of respondents in resisting petitioner's claims. These facts, however, show the truth of the recital made by the court in its order of September 11, 1929, that is that petitioner had not exercised any parental control over her child and that the child was in need of it. On the other hand, these facts

fail to show that the petitioner was incapable of providing parental care for her child or that she failed or neglected to provide such care for her child. They show that at the time of the making of said order, and for some months before she had strenuously endeavored, by legal means, and by means which were not at all times strictly legal, to gain control of her child that she might exercise parental control over him." (*In re Edwards,* 208 Cal. 725 [284 Pac. 916, 919].)

Since the above was written the record discloses that appellant here has been active in her efforts to obtain possession of her child. *In re Cordy,* 169 Cal. 150 [146 Pac. 532, 534], after quoting section 224 of the Civil Code relative to adoption proceedings of minors, the court proceeds to say:

"The first and most pertinent question raised by a reading of this section is the question as to whether it contemplates that a child left in the care and custody of another without provision for its support may be declared by the court to be 'an abandoned child', without an intention on the part of the parent to abandon it having been shown. The word 'abandon', as defined by Webster, means 'To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation of allegiance or fidelity; to quit; to forsake' (Webster's New International Dictionary). If this is the usual and ordinary meaning of the word 'abandon' then it is not to be construed as having a different significant tion in the section of the code above quoted, unless the intent of the legislature to give it another and narrower meaning is to be clearly discerned in the context and from the whole language of the section. This rule of construction should have an especial application to cases of this character, where the natural relation existing between a parent and a child is sought to be severed by law. It is the respondent's contention in this case that the language of the section is plain; and that the mere fact of a parent's leaving her child in the care and custody of another for a space of a year without provision for its support, is sufficient to warrant a court in determining that the child is an abandoned child. But this cannot have been the legislative intent for instances will at

once occur to the right thinking and sympathetic mind of the monstrous injustice of the rigid application of such a rule. We think rather that the meaning of the word 'abandoned' as above given was intended by the makers of the law to dominate the section, and to cause to be read into every part and provision of it the idea that the acts of the parent in relation to the child enumerated in the statute must have been done with an intent to abandon the child. She must have left it to the care and custody of others with that intention, and a like intent must be shown to underlie her failure, if she has failed, to make provision for its support. . . .

" . . . the power of the court in adoption proceedings to deprive a parent of her child, being in derogation of her natural right to it, and being a special power conferred by statute, such statute should be strictly construed; 'that the law is solicitous toward maintaining the integrity of the natural relation of parent and child and in adversary proceedings in adoption, where the absolute severance of that relation is sought without the consent and against the protest of the parent, the inclination of the court, as the law contemplates it should be, is in favor of maintaining the natural relation; every intendment should be in favor of the claim of the mother under the evidence; and if the statute is open to construction and interpretation it should be construed in support of the right of the natural parent.''

In the *Matter of the Petition of Kelly,* 25 Cal. App. 651 [145 Pac. 156], the court uses the following language:

"In the second place, we are persuaded to say that the mere failure of the parents of a minor child, in the custody and under the care of a third party, to contribute, while it is in such custody and care, to the support and maintenance of such child for a period of one year, does not of itself constitute an abandonment of the minor within the purview of said section of the code. If the rule were otherwise—that is, if an adjudication of abandonment could legally be predicated on the mere failure of the parents to support their minor children—the result, in innumerable instances, would be to work a manifest wrong upon parents. It is not difficult to conceive of circumstances wholly beyond the control of parents having the deepest affection for their

children which would render it impossible for them to support their children or care for them in a proper way. It would indeed, be a harsh rule which would, under such circumstances, authorize a judicial determination by which the natural right of the parents to the custody and control of their children would be forever destroyed. . . .

"The promise by the father of the child that he would compensate, whenever able to do so, the petitioners for taking care of and supporting it, constituted the 'agreement or provision for its support' contemplated by said section, and the fact that the father failed to keep said promise can prove nothing but a violation of the agreement."

We are of the opinion that the judgment of the juvenile court is not sustained by the evidence. It is therefore ordered that said judgment be and the same is reversed and the said juvenile court is ordered to dismiss the petition filed herein.

Jennings, P. J., and Marks, J., concurred.