[Civ. No. 7145. Third Dist. Jan. 24, 1946.]

In re HAZEL CATTALINI et al., Minors. MARY HORR, Respondent, v. MARK CATTALINI, Appellant.

John A. Hodges and Oliver J. Carter for Appellant.

Glenn D. Newton for Respondent.

PEEK, J.—This is an appeal by the father of two minor children from an order of the Juvenile Court of Shasta County determining that said children had been abandoned by him and therefore were free from his custody and control.

Mark and Mary Cattalini were formerly husband and wife. Two children, Hazel and Carolyn, who are minors, of the present ages of about 9 and 7 years, respectively, were born as the issue of the marriage. Dissensions arose between the spouses. On November 30, 1940, Mary Cattalini secured a divorce from her said husband in Nevada on the ground of failure to provide her with the necessaries of life. The children were awarded to the custody of the mother, but no order for their maintenance was made. On December 7, 1940, the mother married Clifford Horr, and since then has lived with him and her said minor children in Shasta County. On April 11, 1942, Mark, the father of said children, married his present wife, Helen, and since that time they have resided in South San Francisco. At the time of their marriage, Helen had one minor child by a former husband. Two other children were born as the issue of Mark Cattalini's second marriage.

By her petition, respondent alleges that "since the entry of said final decree of divorce, the father has contributed nothing whatever towards the support of said minor children, Hazel Cattalini and Carolyn Cattalini, save and except the sum of Eighty and no/100 ($80.00) Dollars, nor has he

shown any interest whatever in said minors, and in fact has never, on his own volition, visited said minors since said final decree of divorce; that your petitioner took said minor children to see said Mark Cattalini in the summer of 1942; that said Mark Cattalini since said date has never visited with, nor attempted to visit with, said minor children. That the last payment for the support of said minor children by Mark Cattalini was the sum of Ten and 00/100 ($10.00) Dollars in the month of February, 1943, and more than one year has passed since any contribution has been made by said Mark Cattalini for the support of said minor children." The petition further alleges that Clifford Horr, the present husband of respondent, in whose home the children have resided since their mother's remarriage, "is willing to adopt said minors as his own daughters."

Appellant's demurrer to the petition, on the ground of want of jurisdiction and failure to state a cause of action, was overruled. He thereupon answered, denying the material allegations of the petition, and alleged that during all the times mentioned therein he communicated with his children and has contributed to their support to the extent of his financial ability.

On the issues thus joined a hearing was had before said court, and at the conclusion thereof the court found and concluded: that it had jurisdiction of the persons and of the subject matter and that the procedure laid down in sections 720-727 and 775-777 of the Welfare and Institutions Code had been regularly followed; that all the allegations contained in the complaint were true; that the custody of the minors by judicial decree had been given to their mother; that appellant, their father, for a period of one year had wilfully failed to pay for the care, support and education of said children when able to do so; that "in case of adoption of said minor children that the petitioner, Mary Horr, formerly Mary Cattalini, alone, may consent to such adoption"; and that Hazel and Carolyn Cattalini should be declared free from the custody and control of their father, Mark Cattalini, and he should be deprived of their custody and control.

The appeal from said order presents three principal questions for determination: (1) Did the trial court have jurisdiction to make said order; (2) Is there substantial evidence to support the findings; and (3) Do the findings support the judgment?

Section 701 of the Welfare and Institutions Code provides, in part:

"The jurisdiction of the juvenile court extends also to any person who should be declared free from the custody and control of either or both of his parents. The words 'person who should be declared free from the custody and control of either or both of his parents' shall include any person under the age of 21 years who comes within any of the following descriptions:

"(a) Who has been left by either or both of his parents in the care and custody of another without any provision for his support, or without communication from either or both of his parents, for the period of one year with the intent on the part of such parent or parents to abandon such person. Such failure to provide, or such failure to communicate for the period of one year, shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him."

It is readily apparent from a reading of the quoted portion of said section that it is composed of three main elements: (1) the child must have been left with another; (2) without provision for support or without communication from either or both of his parents for a period of one year; and (3) all of such acts are subject to the qualification that they must have been done "with the intent on the part of such parent or parents to abandon such person."

We turn then to the first question to be resolved: Were the children "left" by appellant in the custody and care of the mother, within the meaning of said section, when they were placed in her custody by a court order? According to Webster's International Dictionary, "leave" means "to put, deposit, deliver, or the like, so as to allow to remain;— with a sense of withdrawing oneself from; as *leave* your hat in the hall; we *left* our cards." Thus the term appears to connote voluntary action. Therefore, it may not be said that appellant left his children in the care and custody of the respondent when, by an order of the court, they were taken from the joint control of their parents and placed in the sole care and custody of the mother.

This very point was considered in the *Matter of Cozza,* 163 Cal. 514, 528 [126 P. 161, Ann.Cas. 1914A 214], where the Supreme Court, in construing Civil Code, section 224, stated: "It contemplates a case where a child has been *voluntarily*

surrendered or left for a year in the care and custody of another without any agreement or provision for its support. This is not the situation here. The care and custody of this child was not so *left* by the mother with either Mrs. Merriman or the petitioners for adoption. It was *taken away* from her and placed in the custody of the former *by order of the juvenile court.* . . . It was *taken* from her under process of court—by *force of law—invoked or, at least, employed for the very purpose of depriving her of the custody of the child."* (Italics added.)

The same rule may well be applied to the present controversy. Here, as in the Cozza case, the children were not voluntarily surrendered or left by appellant; they were taken away from him and placed in the custody of the mother by order of the court. There would appear to be no reason why this rule is not applicable to the facts disclosed herein.

If then the children were not "left" by appellant with respondent, as that word is used in said section 701 of the Welfare and Institutions Code, does the record disclose evidence as to the conduct of appellant subsequent to said divorce sufficient to bring him within that portion of the said section relating to the failure of a parent (1) to make any provision for the support of a child, or (2) to communicate with the child for a year? We have heretofore summarized in full the allegations in respondent's petition with regard to these essential elements. It remains to be seen whether the evidence supports them, or at any rate, whether the evidence supports the findings which, in language at least, vary considerably from said allegations.

 The evidence shows that it was only during the seven or eight months immediately preceding the filing of the complaint that appellant was able to make provision for the children's support. Prior to that time, the births of two babies, about a year apart, to his wife, Helen, the death of his father, an operation on his eye, and a journey to see respondent and their children (which proved futile, as appellant could not find them), were matters that required the expenditure of all the wages appellant made—which he regularly turned over to Helen. Furthermore, it is made evident that, even under those circumstances, appellant and his wife would have contrived to send money for Hazel and Carolyn had not respondent discouraged them from doing so by indicating quite plainly at that time that such action would be neither neces-

sary nor welcome. They were given to understand by respondent that she and her husband, Clifford Horr, were able to support the two girls without assistance, and that Horr would resent the sending of gifts.

From such evidence it would appear that at least in part the failure of appellant to furnish support for the children might well be attributed to his inability to do so. In the case of *Moch* v. *Superior Court*, 39 Cal.App. 471, 477 [179 P. 440], it was held that "failure to provide for a period of one year does not operate to constitute the child an abandoned child. It is merely 'presumptive evidence of an intent to abandon.' The presumption thus created could, therefore, be overcome by opposing evidence, and when it is made to appear that the failure to provide was by reason of the inability to do so, less evidence than under other circumstances would naturally be required to overthrow such presumption."

Turning again to the record, we find that when all was well with respondent and her second husband no demands were made upon appellant for assistance in providing for the children. In fact, appellant, as noted, was specifically requested to remain away from them and not to assist financially nor to send presents. When all was not well between respondent and Horr demands were made upon appellant. This was true, for example, when respondent was desirous of obtaining appellant's services as a witness in her behalf in opposing divorce proceedings which Horr had instituted against her.

No contention is made by respondent that appellant failed to communicate with the children; neither did she so contend at the hearing. As previously mentioned, the allegations in her complaint were that appellant had shown no interest in the children and of his own volition had never visited them since the divorce decree. Upon this question the evidence shows that appellant communicated with the children both directly and indirectly—directly when he sent Christmas and birthday cards and a locket, and indirectly when he communicated with them through the letters written at his specific request by his wife.

Such actions on his part surely come within the meaning of "communication" which, according to the text in 15 Corpus Juris Secundum, pages 638-639, means "intelligence, news, that is communicated or imparted, a written or verbal message," and is not restricted to mere words, but "includes

acts as well, embracing every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons, and every method by which one person can contrive impressions or information from the conduct, condition, or language of another." See, also, Words and Phrases, volume 8, page 142 et seq.

As previously noted, the provision in said section 701 relative to the failure to provide for a child left with another for a period of one year is qualified by the phrase "with the intent on the part of such parent or parents to abandon such person."

Upon this question the evidence shows without contradiction that appellant at all times, including the period between February 23, 1943, and March 16, 1944—the period when appellant and his wife did not send money for the support of Hazel and Carolyn—kept insisting that he had no intention of giving up his children. This, coupled with the undisputed facts upon which is based the explanation of appellant and his wife of their failure to send money during said period, should have been deemed sufficient to dispel the presumption of intentional abandonment that otherwise might have arisen, and requires a determination that appellant in fact did not intend to abandon said children.

The crucial issue here then was whether or not the alleged acts of appellant were committed by him "with the intent to abandon" the children, and, if so, whether or not such intent persisted for a period of one year thereafter (*Moch v. Superior Court, supra*). In other words, each of the elements set forth in said section 701(a) is qualified by the provision "with the intent on the part of such parent or parents to abandon such person"; and this in turn is qualified by the further provision that such failure to provide or communicate for one year shall be only "presumptive evidence of the intent to abandon."

In the case of *In re Cordy,* 169 Cal. 150 [146 P. 532, 534], wherein the principal question involved was the interpretation to be placed upon the word "abandon," as it was used at that time in section 224 of the Civil Code, the court, at page 153, stated that "The first and most pertinent question raised by a reading of this section is the question as to whether it contemplates that a child, left in the care and custody of another without provision for its support, may be declared by the court to be 'an abandoned child,' without an intent on

the part of the parent to abandon it having been shown." First the court quoted the definition of "abandon" as found in Webster's New International Dictionary, as follows: "To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation of allegiance or fidelity; to quit; to forsake." The court further went on to say that "If this is the usual and ordinary meaning of the word 'abandon' then it is not to be construed as having a different signification in the section of the code above quoted, unless the intent of the legislature to give it another and narrower meaning is to be clearly discerned in the context and from the whole language of the section." Concluding this portion of its discussion, the court said: "We think rather that the meaning of the word 'abandoned' as above given was intended by the makers of the law to dominate the section, and to cause to be read into every part and provision of it the idea that the acts of the parent in relation to the child enumerated in the statute must have been done with an intent to abandon the child. She must have left it to the care and custody of others with that intention, and a like intent must be shown to underlie her failure, if she has failed, to make provision for its support."

In this the court was reiterating in different language the rule as enunciated in *Guardianship of Snowball*, 156 Cal. 240 [104 P. 444], and in the case of *Matter of Cozza, supra*. In the latter case it was held that the word "abandon" must be given its strict meaning when applied to an adoption proceeding wherein it is sought to deprive a parent of his child in derogation of his natural right. The proceeding herein likewise involves the exercise of a special power which may be likened to the power of a court in adoption proceedings. This being so, as the court in the case last cited stated, where absolute severance of the relation of parent and child is sought "the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation," and "Every intendment should have been in favor of the claim" of the parent under the evidence, and "if the statute was open to construction and interpretation should be construed in support of the right of the natural parent." See, also, *Matter of Kelly*, 25 Cal.App. 651, 653 [145 P. 156].

This same rule was followed in the case of *In re Edwards,* 117 Cal.App. 667 [4 P.2d 560], wherein the court specifically held that "abandon" must be given the same meaning in the juvenile court law that it was designed to convey when used in the early language of section 224 of the Civil Code.

With respect to the absence of a sufficient showing of an intent to abandon, appellant places a considerable amount of reliance on the previously cited cases of *In re Edwards, Matter of Kelly, In re Cordy,* and *Matter of Cozza,* cases involving the alleged abandonment of a child by its parent to a third person. Appellant's position in this regard appears to be entirely proper, for if he is to be charged with the duties and responsibilities of a parent who has turned over the custody of his child to a stranger, certainly he should be permitted to make the same defense that the parent in such a case would be permitted to make.

However, even if it properly could be said that appellant had failed to support the children, this circumstance alone would be of no avail to respondent, for it is the law of this state that in a case where, by the decree of a divorce court, custody of a minor child has been awarded to the mother without any provision for the support of the child by the father, and where in such custody the child is being supported and maintained in a proper manner, as between the parents the immediate legal duty of support and maintenance rests with the mother as long as such conditions continue. (Civ. Code, § 196; *Pacific Gold Dredging Co.* v. *Industrial Acc. Com.,* 184 Cal. 462, 465 [194 P. 1, 13 A.L.R. 725]; *Watkins* v. *Clemmer,* 129 Cal.App. 567, 574, 576 [19 P.2d 303]; see, also, 15 A.L.R. 569; 81 A.L.R. 887.) As was stated in the case of *Watkins* v. *Clemmer, supra,* at page 577, "the primary parental obligation in this case was with the mother, and will continue with her until the order (under § 138) is modified or vacated; that so long as the order remains in force it is the measure—at least as between the former spouses—of the father's obligation."

Of course, this is not to say that one who by his own misconduct has made himself unfit to be the custodian of his child has by the same misconduct absolved himself from all legal responsibility for the child's support. On the other hand, before a father may be charged with dereliction in this regard it must be made to appear that he has intentionally shirked that responsibility at a time when, and under circumstances where, he should have assumed it.

In the case at bar the evidence on this phase of the matter is not conflicting, nor is it reasonably susceptible of different inferences. As we have pointed out, during the critical period herein involved appellant was not called upon to discharge the duties of a father toward these children but was expressly discouraged from so doing. On the one occasion which may be said to fall generally within this period, when he was requested to give aid to his daughter on account of illness, he responded readily and eagerly. ██ The circumstance that in 1939, prior to his divorce, his conduct might have warranted a different determination, is immaterial.

██ It is likewise immaterial to this case that the motivating reason for the proceeding herein, as indicated by respondent in her petition, and its indirect effect, as indicated by the court, may be to dispense with the necessity of procuring appellant's consent to an adoption of the children by their stepfather, Horr (and presumably also to dispense with the necessity of citing appellant to appear in the adoption proceeding and show cause, if any, why the petition therein should not be granted). The willingness of Horr to adopt the children has no place in a consideration of whether or not they were left by appellant in the custody of respondent or ''another,'' as that word is used in said section 701, without support or communication for a period of one year with the intent on the part of appellant to abandon them.

The judgment is reversed.

Adams, P. J., and Thompson, J., concurred.