THE PEOPLE OF THE STATE OF NEW YORK ex.rel. DONATO COCUZZA et al., Relators, against ELEANOR COBB, Defendant.

Supreme Court, Special Term, Bronx County, December 5, 1949.

*John H. Mariano* for relators.

*Philip Roth* for defendant.

HAMMER, J. This proceeding by a writ of habeas corpus is for the custody of a child, of the age of six and one-half years. Shortly after birth the child was entrusted by the mother to a married woman who was childless. The evidence shows this latter to be a highly estimable religious person and that she and her husband treated the child as their own and gave it every advantage of care, maintenance and affection which could have been expected if the child were their natural offspring. The child was baptized in their own church by a clergyman who was their own friend and pastor, and also has been given the advantage of further religious training by an additional clergyman. The child knew the married couple by whom it was nurtured and raised as its own parents. It never had known its natural parents. Undoubtedly, if such conditions continued, the welfare of the child would have been in good hands. The natural mother of the child, I am convinced, intended, at the time she gave over the child, to surrender it completely to the defendant. That was the testimony of defendant and a mutual friend who had arranged the matter. But all agree that the mother was in desperate circumstances, without the means to feed or care for the child which during the last war had been born to her out of wedlock from an interracial union of the mother with a member of the armed forces who had been informed by the mother that the child had died. The mother at the time was living in squalor which defendant and her witness charac-

terized as filth. At the time there was another child of the same union about one and one-half years of age. Later a service allotment was arranged for support as dependents. What is more important the man and woman married while he was still in service, and thus regularized their relationship and legitimatized their children. (Domestic Relations Law, § 24; *Matter of Hoagland,* 125 Misc. 376.) After the husband's separation from service a home was obtained and the parties apparently reside in domestic felicity, and tranquility, with the evident purpose of establishing and continuing a normal family life for themselves and their children. The mother nevertheless did not correct the falsehood to her husband in respect of the stated death of the child whose custody is under consideration here. Since the marriage another child has been born. The father has a good position, their children have the appearance of being properly cared for, and the family seems to be financially secure and as normally well off and situated as would reasonably be found in a family similarly circumstanced. The evidence shows that the defendant's husband died on November 21, 1948; and that she has found herself required to seek relief from the department of welfare. Investigation thereupon brought to light the parents whose responsibility it was to support the child and to the father the knowledge that his child had not died but was in the possession and under the care of defendant. This proceeding followed. Parents have a natural right to the custody of their children which cannot be interfered with by law or the discretion of courts simply to better the moral and temporal welfare of the child. (*Matter of Livingston,* 151 App. Div. 1; *Matter of Johnston,* 76 Misc. 374.)

The defendant here asserts that by reason of the surrender to her of the child by the mother she has acquired the right to retain the custody, care, maintenance and upbringing of the infant child. This in effect would amount to an adoption. The adoption of children and strangers in blood although known to the Athenians and Spartans, the Romans and ancient Germans, and to the law of France and Spain was unknown to the common law of England. It exists in the States of the United States solely by statute. (*Carroll* v. *Collins,* 6 App. Div. 106; *United States Trust Co.* v. *Hoyt,* 150 App. Div. 621.) The law of New York (Domestic Relations Law, § 111) requires the consent to an adoption of a legitimate infant child of both parents if living, or that of the mother of a child born out of wedlock, but dispenses with the consent of a parent who had abandoned

the child or surrendered the child to an authorized agency for the purpose of adoption which latter may fairly be construed as a legal abandonment. Only in this manner as expressly provided by statute may the natural right of the parent be interfered with by the courts. Abandonment by the natural parents may be found only when being given the benefit of every controverted fact, such an inference follows from the evidence as a matter of law. (*Matter of Bistany,* 239 N. Y. 19, [opinion by CARDOZO, J., later Ch. J.].) The poignant anguish of this loving and devoted woman who has had this child for six and one-half years from the time when it was but a few days old, upon which she has lavished in that period of tender infant helplessness every maternal care and affection with an attachment equal or akin to that of a natural mother can hardly be appreciated. But no effort was made to obtain full right to the child by adoption nor was any effort made by defendant to obtain pay or support money from the natural mother. Indeed if either such attempt had been made defendant would have become aware of the changed status of the mother and father and of their marriage which also changed the status of the child. It cannot be thought that this defendant and her husband, a childless couple, so apparently moved by their interest in and affection for the child were concerned about the cost to them of its support. The question directly presented however is not that of the anguish of defendant or the expense and labor which was incurred, or the devotion and affection lavishly expended. Stated bluntly it is whether relators under the facts disclosed by the evidence have forfeited their rights of parenthood. Could it be said that the natural mother's surrender amounted to a legal abandonment no such ignominy can be fastened upon the father. True it is that he sinned grievously against this child and that previously born by the union out of wedlock with their mother. This insofar as later repentance could atone for those faults he contritely amended when he and their mother married. Under the common law the mantle of charity has been drawn over the previous illicit relationship which no peeping inquisitiveness of scandalous busybodies is permitted to raise to question the legal status of innocent children. All the antenuptial incontinence and lapses from virtue were by the marriage covered with oblivion. (*Glean* v. *Glean,* 70 App. Div. 576 and cases cited). Section 24 of the Domestic Relations Law has made such protection of children a matter of public policy. If we were to apply the more stringent construction placed upon the term

" abandon " in the minority opinion expressed by McLaughlin, J. in *Matter of Bistany (supra,* p. 29) wherein he said the term " ' abandon ' means, it seems to me, neglect and refusal to perform the natural and legal obligations of care and support " the petitioning husband who has by lawful wedlock legitimatized this and his other children of the union cannot be held guilty of any such willful misconduct. He did not even know his child was living. It would be a most unusual happening in our present state of society and our recognition of the paramount rights of lawful parents in their children if this father or for that matter these repentant parents were deprived of their child and under the shibboleth of the good and welfare of the child, or that of the promotion of its moral and temporal interests, the care and custody were bestowed upon defendant, excellent and most affectionate maternal woman that she concededly is shown to be by the evidence.

In speaking of the rights of men under the natural law Alexander Hamilton made this observation: " The sacred rights of mankind are written as with a sunbeam in the whole volume of human nature, by the hand of Divinity itself and cannot be erased or obscured by. mortal power ".

On the same subject Blackstone in his Commentaries (Lewis ed., Vol. 1, p. 30) stated: " the Creator is a being not only of infinite *power* and *wisdom,* but also of infinite *goodness,* [therefore] he has been pleased so to contrive the constitution and frame of humanity, that we should want no other prompter to inquire after and pursue the rule of right, but only our own self-love, that universal principle of action. For he has so intimately connected, so inseparably interwoven the laws of eternal justice with the happiness of each individual, that [happiness] cannot be attained but by observing the former; and, if the former be punctually obeyed, it cannot but induce [happiness]."

Under the evidence presented it must be held that relators are entitled to the custody of their child brought before us by the writ of habeas corpus. Obviously defendant's anguish may not be assuaged completely, but it may be alleviated by the direction that will be given that she will continue to have the privilege of all reasonable visitation heretofore temporarily granted. In respect of compensation for the expenditure of money for the care and maintenance of the child, if defendant be interested therein, this decision is without prejudice to any right or remedy she may have.

Settle order.