## McNutt Appeal.

Argued September 28, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER, J., absent).

*H. Eisenberg,* with him *Samuel F. Pepper,* for appellant.

*Lewis Weinstock,* with him *Conlen, LaBrum & Beechwood,* for appellee.

OPINION BY RHODES, P. J., November 15, 1951:

This is an appeal by the natural mother from the decree of the Municipal Court of Philadelphia County granting the petition for adoption of her child, Margaret Elizabeth Cornman, born on September 18, 1946. The decree of adoption was entered on February 6, 1951, after hearings held on June 1, 1949, and November 3, 1950, on the petition of James A. Aiello and Mary M. Aiello, his wife. Elizabeth McNutt, the mother of the child, has appealed from the decree.

The child's mother did not consent to the adoption but the court below found that she had abandoned her child and therefore granted the petition for adoption. The Act of April 4, 1925, P. L. 127, as amended, 1 PS

§1 et seq., provides for adoption and prescribes the procedure. Section 2 of the amendatory Act of June 30, 1947, P. L. 1180, 1 PS §2, provides, inter alia, as follows: "The consent of a parent . . . who has abandoned the child, for a period of at least six months, shall be unnecessary, provided such fact is proven to the satisfaction of the court or judge hearing the petition, in which case such court or judge shall so find as a fact; . . ." *Oelberman Adoption Case,* 167 Pa. Superior Ct. 407, 412, 413, 74 A. 2d 790. The primary question on this appeal is whether the evidence supports the finding of the hearing judge that the mother abandoned her child within the meaning of the Adoption Act.

The child was born on September 18, 1946. The parents are John Cornman and Elizabeth Cornman, who was later divorced and then married one Horace McNutt. The child was taken by the mother to the petitioners on January 6, 1947, and has remained in their custody since that time. The petitioners are the uncle and aunt of the mother of the child. The Cornmans had another child born on January 22, 1945, which has remained with appellant. Appellant has two children by her second husband.

At the first hearing, on June 1, 1949, the Aiellos, the petitioners, testified that they accepted the child on condition that appellant surrender her right to the child, and that she agreed the child should be adopted by them. As to these facts there was substantial corroboration to the effect that appellant told the petitioners they could have the child, that she did not want it, and that the petitioners could adopt it. In addition the child's father, John Cornman, testified that he favored the adoption, having executed a consent dated May 13, 1949; that appellant took the child to the Aiellos for the purpose of adoption; and that this was her intention from the time the child was four

or five days old. The paternal grandparents of the child also testified that appellant did not want the child, and that in their opinion it would be for the best interests of the child to remain with the petitioners and be adopted by them.

Appellant testified at the second hearing, on November 3, 1950, that her reason for leaving the child with the Aiellos was her inability to take care of it, and that she merely intended to leave the child with them until she obtained a divorce. At this hearing there was also offered in evidence a written withdrawal of the consent previously given by the father, John Cornman, on May 13, 1949. Neither the father nor the mother ever contributed to the support of the child or assumed any responsibility for her care and training after January 6, 1947. These matters were the sole concern of the petitioners. There is no controversy as to the finding of the hearing judge that the father of the child abandoned it. Appellant obtained a support order against her first husband in favor of the other child John Joseph Cornman, but she made no application for support for the child Margaret.

There are other incidents besides failure to give support or any parental care that shed light on the intention and settled purpose of appellant "to forego all parental duties and relinquish all parental claims." *Hazuka's Case*, 345 Pa. 432, 435, 29 A. 2d 88. She arranged to have the child's birth certificate sent to the Aiellos, and she told the family physician that the child should be listed on his records under the name of Aiello. As to appellant's intention the testimony is conflicting, and the determination of this question depends upon the testimony which is accepted as truthful.

The testimony warrants the conclusion that appellant, having delivered the child to the petitioners for the purpose of adoption on January 6, 1947, manifested little if any interest in the child until the spring of

1949, two years and four months later, at which time she first stated that she desired to have the child returned to her. Appellant's testimony as to her contact with the child after January, 1947, is contradictory and in part incredible, and her attempt to explain material facts bearing on the question of abandonment was unconvincing. She testified that she had given up the child because she was put out of the home of her first husband; but on this point there was contradictory testimony. She also testified that she estimated the total number of her visits to the child from May 1, 1947, to June, 1948, at 100 or 150, and that she did not see or communicate with the child from 1948 until Easter, 1949. There was credible testimony that the mother visited the child only six or seven times between January 6, 1947, and December 25, 1947, and that she did not visit the child thereafter until she received notice of the filing of the petition for adoption on May 18, 1949.

The hearing judge was convinced of the credibility of petitioners and their witnesses. He consequently found that appellant abandoned her child; that such intent was manifested by her conduct in leaving the child with the petitioners for the purpose of adoption, in placing the entire burden for its support and maintenance upon them, and in failing to visit the child or communicate with petitioners from December, 1947, until April, 1949. The hearing judge also found that the welfare of the child would be promoted by granting the petition for adoption; that the ties between the child and the petitioners are firm and wholesome; that the child has grown and developed most satisfactorily under the loving care and attention of the petitioners; that the home environment offered by the petitioners is a sound and healthful one; that the child is well cared for by them; and that petitioners meet the qualifications for becoming adopting parents.

In *Schwab Adoption Case,* 355 Pa; 534, 538, 50 A. 2d 504, 506, it is said that abandonment "imports any conduct on the part of the parent which evidences a settled purpose to forego all parental duties and relinquishes all parental claim to the child: Weinbach's Appeal, 316 Pa. 333, 175 A. 500." Whether or not a child has been abandoned is a question of fact. *Hazuka's Case,* supra, 345 Pa. 432, 435, 29 A. 2d 88. The testimony in the present case clearly supports the findings of the hearing judge, and as our scope of review is to determine whether there is evidence sufficient to support the findings (*Montgomery Adoption Case,* 167 Pa. Superior Ct. 635, 636, 76 A. 2d 240; *Susko Adoption Case,* 363 Pa. 78, 81, 69 A. 2d 132), the decree of adoption will be affirmed. When abandonment has been established with the required legal sufficiency, the welfare of the child becomes a paramount concern of the court. Under the circumstances disclosed by the record of this case, there would seem to be no doubt that the welfare of the child as found by the hearing judge will be promoted by the adoption, and that it would be detrimental to the best interest of the child to sever the relationship which has been created and to subject the child to new conditions in an uncertain environment.

The decree is affirmed; each party to pay own costs.