[Civ. No. 18432.   Second Dist., Div. Three.   Dec. 28, 1951.]

In re JONE WELCH, a Minor.   CLIFFORD HAKES et al.,
Respondents, v. SYDNEY PERKINS, Appellant.

James M. Fizzolio and C. Thomas Fizzolio for Appellant.

Church, Church & Howard for Respondents.

WOOD (Parker), J.—Appeal from a decree adjudging that a minor is an abandoned child within the meaning of section 701 of the Welfare and Institutions Code, and from an order declaring that she is free from parental control.

Section 701 of said code provides: "The jurisdiction of the juvenile court extends also to any person who should be declared free from the custody and control of either or both of his parents. The words 'person who should be declared free from the custody and control of either or both of his parents' shall include any person under the age of 21 years who comes within any of the following descriptions: (a) Who has been left by either or both of his parents in the care and custody of another without any provision for his support, or without communication from either or both of his parents, for the period of one year with the intent on the part of such parent or parents to abandon such person. Such failure to provide, or such failure to communicate for the period of one year, shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him."

It was alleged in the petition herein (for an order declaring the minor free from parental control) that the minor, Jone Welch, had been left in the care of Mona Tate Kramer by her parents without any provision for her support, and without communication from said parents, with the intent on the part of said parents to abandon said person for the

period of one year and more, "to-wit, continuously since the 9th day of January, 1948, to the time of filing this petition [February 25, 1949]." In a supplement to said petition, filed November 14, 1950, it was alleged that since January 13, 1949, upon which date Mona Tate Kramer placed said child in the home of Clifford and Peggy Hakes, the mother has not communicated with said child at the home of the Hakes and that the address and telephone number of the Hakes were well known to said mother; that since January 13, 1949, she has made no provision whatever for the support of the minor; that she has been capable of earning money for the support of said minor. The court found that the allegations of the petition and the supplement to the petition were true.

Appellant, who is the mother of the child, contends that the evidence is insufficient to establish any intention on her part to abandon the child.

Jone Welch, a girl, was born out of wedlock on September 12, 1944. In February, 1945, appellant placed her in the home of Mrs. Kramer. Appellant and Mrs. Kramer entered into a written agreement which provided that Mrs. Kramer would take full care of Jone; that appellant would pay Mrs. Kramer $21 a week in advance, appellant would assume the financial responsibility of medical care and clothes, and she would keep Mrs. Kramer notified at all times as to her address. She made the payments for the years 1945 and 1946, but the payments for the latter part of 1946 were made at irregular intervals. On May 9, 1947, appellant was in arrears in the payments for Jone's care in the sum of $277. Thereafter, in May of that year, she paid Mrs. Kramer $35, and on December 24th of that year she paid her $60. On January 3, 1948, she paid $80, and on January 9, 1948, she paid $50. No payment has been made by appellant since that date. On January 13, 1949, Mrs. Kramer placed Jone in the home of the respondents, Mr. and Mrs. Hakes, and Jone has lived there since that time.

During the first few weeks Jone lived with Mrs. Kramer, the appellant visited her on week-ends. About June, 1945, appellant and Mrs. Kramer took Jone to the Children's Hospital, and as a result of examinations it was determined that Jone had a defective hip which was a congenital condition. Jone was placed in a plaster cast which extended from her armpits to one of her ankles. She remained in the hospital about 10 days and was then removed to Mrs. Kramer's home. Appellant paid the hospital bill when Jone left the hospital.

Jone remained in a cast about eight months. During that time she required nursing services 24 hours a day, which services were rendered by Mr. and Mrs. Kramer. Approximately once a month it was necessary to take Jone to the hospital for medical treatment. On two occasions appellant and Mrs. Kramer took her to the hospital and the other times Mr. and Mrs. Kramer took her. During the time she was in a cast, appellant saw her four or five times.

In January, 1946, appellant married Mr. Dagmar. In May, 1946, she went to Las Vegas, Nevada, and in October, 1946, she filed a divorce complaint in Las Vegas. Later that year, when she was ill, she went to Mrs. Kramer's home and remained there two or three days as a guest. She lived in Las Vegas about eight months, and then she returned to California. In May, 1947, appellant took Jone to a birthday party and then returned her to Mrs. Kramer's home. Thereafter, Mrs. Kramer tried to communicate with appellant. Mrs. Kramer testified that she sent a registered letter to each of the addresses which appellant had given to her, and that the letters were returned. With reference to accepting registered mail, appellant testified that she "refused registered mail all along, and would still refuse any registered mail." In one of the letters, which was sent on July 8, 1947, Mrs. Kramer stated that she had tried repeatedly for about two months to locate appellant, that appellant had ignored all her requests to get in touch with her, and that Jone's board bill had reached the sum of $410. In another of those letters, which was sent on August 23, 1947, she stated, among other things, that appellant's "complete indifference to Jone and her care, health or progress, and your failure to contribute anything towards her support for months, leads me to believe the task of caring for a child is really too much for you. . . . However your bill now has reached the fabulous size of almost $600.00 and something must be done. The following is a suggestion. That I adopt Jone."

On August 28, 1947, the Children's Hospital Society wrote a letter to Mrs. Kramer stating that it was enclosing a form which should be taken to the probation department "in order that we may have court consents for Jone's treatment." Thereafter Mrs. Kramer filed a petition to be appointed Jone's guardian and in October, 1947, she was appointed such guardian. She testified that it was necessary to have a guardian in order to obtain medical treatment for Jone.

In November, 1947, when appellant went to Mrs. Kramer's home she was told about the guardianship proceeding. On Christmas, 1947, appellant went to the Kramer home and gave clothing and other presents to Jone. At that time she and Mrs. Kramer discussed the guardianship proceeding, and appellant stated, in effect, that she objected to efforts to take her baby from her.

On January 9, 1948, appellant visited Jone at the home of Mrs. Kramer. Thereafter appellant went to San Francisco, and while there, on January 14, 1948, she wrote a letter to Mrs. Kramer in which she stated that she had sent Jone a music box, and that she was going to send money orders every Friday. She stated further in that letter that she had "been thinking over what you did about Jone [the guardianship] and I realize it was the best thing because I know me and it always takes a large jolt to put me straight. Have faith in me and I'll keep my end up and you won't be sorry . . . kiss my baby for me and tell her I love her very much."

About Easter, 1948, appellant went to Mexico and stayed there 10 days. About June, 1948, Mrs. Kramer went to appellant's apartment, on Havenhurst Street in Los Angeles, and told her that she (appellant) would have to do something with the baby—that if she was not able or willing to take care of her she ought to let someone adopt her. Appellant stated that she did not want her child adopted. Thereafter appellant moved from that apartment to a larger apartment. She testified that she moved there in order to have Jone with her. On July 28, 1948, Mrs. Kramer requested that the probation department make an investigation regarding the place where the child should live. About August 1, 1948, a probation officer interviewed the appellant and made a written report of the interview. In her report the officer stated, "The mother has rented a three-room apartment which includes an adjoining outdoor play space for the child, on the assumption that she would soon have Jone in the home with her."

In August, 1948, Mr. and Mrs. Kramer went to Oregon on a vacation and took Jone with them. During their absence appellant went to their home and talked with a friend of the Kramers. The friend wrote a letter to Mrs. Kramer in which she stated that appellant apparently wanted Jone and that appellant did not believe that Jone was on a vacation with the Kramers. Upon receiving that letter, Mrs.

Kramer sent a letter to the appellant in which she stated, "when some months ago I finally located you on Havenhurst St., I called on you really to discuss this [Jone's care] & how you intended paying me (your bill now nearing 1400 dollars) but when I saw where and how you were living it flashed thru my mind that it was a hopeless case and Jone deserves something better & more solid—hence the question of adoption. . . . However—show me your ability to give her a fair chance and I certainly will listen to reason. To suddenly wrench her away from the only home she has ever known would be cruel beyond words, but if you can prove you can care properly for her, a gradual weaning can be established. . . . Your definite obligation however now is to pay your bill for her care. When I return I'll call you and we can discuss this from every angle." That letter was received by appellant. After Mrs. Kramer returned from Oregon, she and appellant had a telephone conversation. On September 12, 1948, Jone's birthday, appellant visited Jone at Mrs. Kramer's home and gave her a small ceramic horse.

On November 10, 1948, Mrs. Kramer wrote a letter to appellant in which she stated: "We have been terribly distraught and worried realizing this change must come about. One cannot live almost four years, actually sacrifice and suffer with a little girl as we have with Jone without loving her as we would our very own . . . but apparently it is not to be—and we ask the privilege here—should circumstances so arise as to alter your decision, please give us the privilege of adopting Jone. As you now have this new apartment and feel able to care for her it is now necessary to face the change. . . . She [Jone] knows no one but ourselves and no home but ours. . . . It would be a terrible blow were she to be torn from this suddenly. . . . To soften this . . . we suggest you be our guest for three or four days to get acquainted with her, so we may introduce you as her mother under any title you prefer. . . . Won't you call and set a date for a friendly visit, perhaps the latter part of this week." Mrs. Kramer testified that she received no reply to that letter. Appellant testified that shortly after she received that letter she telephoned to Mrs. Kramer and "told her that I wanted my daughter now and I had a place for her." A few days before Christmas, 1948, appellant telephoned to Mrs. Kramer and made arrangements to visit Jone at 10 o'clock Christmas morning. She arrived about 1 p.m. and brought gifts to

Jone, and she stayed there about 20 minutes. She did not mention the letter in the telephone conversation or during her visit on Christmas at the Kramer home. As above stated, on January 13, 1949, Jone went to live with Mr. and Mrs. Hakes. On July 22, 1949, appellant visited Jone, who was at Mrs. Kramer's home that day, and stayed about 20 minutes. On Christmas Day, 1949, appellant went to Mrs. Kramer's home and asked where Jone was. Mrs. Kramer replied that appellant knew that Jone was with Mr. and Mrs. Hakes. Appellant then stated that she would go to their home to see Jone, and Mrs. Kramer told her that Mr. and Mrs. Hakes and Jone were out of town. At the time of the hearing herein (November 13, 1950) appellant had not seen Jone since her visit on July 22, 1949.

On February 25, 1949, Mr. and Mrs. Hakes and Mrs. Kramer filed the petition herein for an order declaring Jone free from parental control. On July 15, 1949, the appellant herein filed a petition for a writ of habeas corpus, which was denied. Also on July 15, 1949, the appellant filed a petition for removal of the guardian, which was denied without prejudice on January 18, 1950. In May, 1950, appellant filed a second petition for removal of the guardian, and it appears that no hearing was had thereon for the reason a citation had not been issued. Prior to the hearing on the petition herein (re abandonment), Mr. and Mrs. Hakes filed a petition for adoption of Jone. Those petitions came on for hearing on the same date, November 13, 1950, and the petition re abandonment was heard and determined first. (The petition re adoption was granted at a later date.)

Appellant testified that in 1945 and 1946 she worked as a motion picture actress; she earned not less than $3,000 in 1945 and approximately $7,000 in 1946; in 1947 she worked only four days in motion pictures and earned $22 a day; in that year she collected the maximum unemployment benefits which were in excess of $300 and she lived with friends in Sherman Oaks from the middle of the summer until December; then she went to San Francisco for a few weeks and occupied an apartment of a man who was out of the city, but during that time she traveled back and forth between San Francisco and Los Angeles. She testified that in 1948 she earned barely enough to live on and she received financial assistance from her mother and also from a man friend; during that year she started to work as an apprentice dog trainer; she did not get a "set salary," she received

$200 or $300 from her employer and she also received tips from the customers; while working as such apprentice, she purchased an automobile—"an old jalopy" for which she made a down payment of $50; two weeks later she discovered that it needed a new motor, and she let the seller reclaim it. Counsel for petitioner asked appellant if she had attempted to secure any gainful employment instead of working as an apprentice and making no money. Appellant replied that it was an odd question—that she was desperately trying to get along and make money in her own way in a business world; that she did not approve of women working; and that she and her mother "were building a future, a kennel and a pet shop." She testified further that during 1948 she lived for four or five months in an apartment house which belonged to the man who was giving her financial assistance; she then moved into a house where she lived about eight months, and the rental of $85 a month was paid by the same man friend. She testified further that she first learned that Jone was living with Mr. and Mrs. Hakes about May, 1949, when she was served with the petition herein.

Appellant asserts that the evidence is insufficient, as a matter of law, to support the decree that Jone is an abandoned child within the meaning of section 701(a) of the Welfare and Institutions Code. Said section contemplates that, in order to establish an abandonment, there must be proof that the child was left voluntarily by his parent with another, without any provision for his support *or* without communication from the parent for a period of one year, and with the intent on the part of the parent to abandon him. (*In re Cattalini*, 72 Cal.App.2d 662, 665 [165 P.2d 250].) As above shown, appellant voluntarily left Jone in the care of Mrs. Kramer. The court found that she made no provision for Jone's support for a period of more than a year beginning January 9, 1948. The evidence supports that finding. Appellant agreed to pay $21 a week for Jone's support, to pay for her medical care and clothing, and to keep Mrs. Kramer informed as to appellant's address. After January 9, 1948, appellant made no payment for Jone's support, for medical care or clothing, and she failed to keep Mrs. Kramer informed as to her whereabouts. The failure to provide for a minor for the period of one year is presumptive evidence of the intent to abandon the minor. (Welf. & Inst. Code, § 701(a), *supra.*) "While this presumption may be overcome by opposing evidence the question whether an

intent to abandon has existed for a period of a year is a question of fact for the trial court." (*In re Sanders*, 88 Cal.App.2d 251, 254 [198 P.2d 523].) ▆ Appellant asserts that her failure to make payments for support was due to her financial distress. The court found that appellant was able to provide for Jone's support during the period of the alleged abandonment. As above shown, during the year following January 9, 1948, appellant went to San Francisco and she went to Mexico for 10 days; she made a down payment of $50 on the purchase of an automobile; at the time a probation officer visited her in August she was living in a three-room apartment; and she testified that later she moved into a house which was rented for $85 a month. ▆ It is the province of the trial court to weigh the evidence and determine the credibility of the witnesses. (*In re Creely*, 70 Cal.App.2d 186, 189 [160 P.2d 870].) ▆ It cannot be said, as a matter of law, that finding was not supported by the evidence.

The said statutory presumption of intent to abandon, and the other evidence including the inference which might reasonably be drawn therefrom, are legally sufficient to support the finding of abandonment. (See *In re Sanders*, 88 Cal.App. 2d 251, 256 [198 P.2d 523].)

▆ Appellant also contends that the court erred in considering the child's desire to remain with Mr. and Mrs. Hakes. The trial judge asked the child how she liked to live with Mr. and Mrs. Hakes, and whether she preferred to live with them or with the appellant. The issue herein was whether there was an abandonment of the child. The child's wishes, with respect to where she preferred to live, were immaterial upon that issue. ▆ Irrespective of the interview of the child by the judge, if the evidence otherwise was legally sufficient to support the finding of fact as to abandonment, this court is not empowered to disturb the decree of the trial court. The evidence being legally sufficient, as above stated, this court is bound by the trial court's finding.

The decree and order are affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 25, 1952.