## In re Adoption of WALTON et al.
## WORTHEN et ux. v. WALTON

No. 7933.  Decided July 20, 1953.  (259 P. 2d 881.)

See 2 C.J.S. Adoption of Children, sec. 21. Divorced parents, consent of, as essential to adoption. 1 Am.Jur., Adoption of Children, sec. 43; 91 A.L.R. 1387.

*Young, Young & Sorensen,* Provo, for appellant.

*Arthur H. Nielsen,* Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from an adoption decree, wherein 2 minor boys were awarded to Caroline (Walton) Worthen and her second husband, ending the parental rights of her former husband, Gerald B. Walton, on the theory Walton had deserted the boys and therefore his consent to the adoption was unnecessary under Title 78-30-4, U.C.A.1953. Reversed, the decree to be vacated, costs on appeal to appellant.

Mrs. Worthen will be designated as W, Mr. Worthen as H, and Walton as F for simplicity. "Desertion" and "abandonment" will be considered synonymous for the purpose of this decision.

W and F married in 1938, lived in Arkansas, then in Nevada, where the boys were born, returned to Arkansas where F *supported* the family until 1944, when W left him and took the boys to Utah, where she has remained. The year following, F divorced W in Arkansas by constructive service of process. In 1949 W married H who since has supported her and the boys. From 1944 to 1949, F, when requested by W, sent small sums for the boys' support, aggregating at least $305, evidenced by a dozen money order receipts. F asserted that he furnished more than the receipts indicated, and also sent bicycles and other gifts which W refused to accept. He visited Utah on more than one occasion, where, he says, he was not permitted to see the boys except at school. In 1947 he took the boys to Arkansas, where they lived with him for a year. Significant is W's testimony that F was to return the boys in 6 months, but kept them a full year, when she was forced

to go to Arkansas for them. After W remarried, F sent no money except $20 after learning of the planned adoption, after W had refused to accept the cash, and perhaps after he consulted an attorney. It is uncontraverted that after the separation, H was ill and unable to earn much, except during a two-year period in Michigan where he grossed about $8,000. Otherwise he seemed to be always burdened with debt, business failure and ill health, which last circumstance partly induced him to go to Colorado, where he, his second wife and her 3 children by a previous marriage reside. There he bought a home and a business, both mortgaged, requiring about $225 current monthly payments, which to date he has met, besides supporting the family, although he has had some reverses in the past year. W testified that F once told her when in Utah that he would send some money and that "I am trying to help out a little bit." He wrote her in March, 1952 that he was going to try to pay more and could do so if matters continued as they were going. He testified that because of reverses he had been unable to respond. He further said he was not permitted to see the boys and that W and H told him they wanted nothing from him and for him to leave them alone. F came to Utah, employed an attorney, protested the adoption, withheld his consent and offered to furnish support to the best of his ability.

We are convinced that these facts fall far short of that type and degree of proof required by the authorities to establish the necessary intent to desert a child, sufficient effectively to dispense with a parent's consent under our adoption statute.

Courts have not hestitated to build a strong fortress around the parent-child relation, and have stocked it with ammunition in the form of established rules that add to its impregnability. To sever the relationship successfully, one must have abandoned the child, and such abandonment *all* correlative rights and duties incident to the relation-

must be with a specific intent so to do,[1]—an intent to sever ship. Such intent must be proved by him who asserts it, by proof that not only preponderates, but which must be clear and satisfactory,—something akin to that degree of proof necessary to establish an offense beyond a reasonable doubt, or, as one authority puts it "by clear and indubitable evidence."[2] The relationship has been considered a bundle of human rights of such fundamental importance as to lead courts frequently to say that consent is at the foundation of adoption statutes,[3] that evidence pertaining to it must be appraised in a light most favorable to him whose parental right is assaulted,[4] that adoption statutes being in derogation of the common law are to be construed strictly in favor of the parent and the preservation of the relationship,[5] (although not the rule in Utah) and that all doubts are resolved against its destruction. The authorities have gone so far in their protection of these kinship rights as to hold that an abandonment, even though a fait accompli, can be the subject of repentance,[6] absent vested rights in others. Ofttimes it is pointed out that abandonment, within the meaning of adoption statutes, must be conduct evincing

"a settled purpose to forego *all* parental duties and relinquish *all* parental claims to the child."[7]

---

[1]In re Kelly, 1914, 25 Cal.App. 651, 145 P. 156.

[2]In re Kelly, 25 Cal.App. 651, at page 658, 145 P. 156, at page 159.

[3]In re Cozza, 1912, 163 Cal. 514, 126 P. 161; In re Cattalini, 1946, 72 Cal. App. 2d 662, 165 P.2d 250.

[4]People ex rel. *Cocuzza* v. *Cobb*, 1950, 196 Misc. 961, 94 N.Y.S.2d 616; In re Cozza, supra.

[5]In re Adams. Mo.App., 1952, 248 S.W.2d 63: In re Cattalini, 1946 72 Cal.App.2d 662, 165 P.2d 250; In re Jackson, 1934, 55 Nev. 174, 28 P.2d 125, 91 A.L.R. 1381.

[6]*Lavigne* v. *Family and Children's Soc.*, 1952, 18 N.J.Super. 559, 87 A.2d 739.

[7]1 Am.Jur. 643, Sec. 42; *Stalder* v. *Stone*, 1952, 412 Ill. 488, 107 N.E.2d 696; In re Conman, 1951, 169 Pa.Super. 641, 84 A.2d 360; In re Cozza supra; In re Strauser, 1948, 65 Wyo. 98, 196 P.2d 862.

In defense of the relationship are authorities which refuse to accept "abandonment" as synonymous with "nonsupport" under adoption statutes,[8] although nonsupport may be an important factor in establishing an abandonment.[9] So jealously guarded is the parent-child relation that uniformly it is held that the adandonment or desertion firmly must be established by the type of proof we mention, before any question as to the best interests or welfare of the child can be the subject of inquiry.[10] The importance of preserving the relationship clearly is pointed up when one considers the well-established concept that custody may be awarded in a proper case, while the courts may have no power to sever the relationship,—accounting for the principle that the welfare of the child is of great importance in custody cases, but quite immaterial in adoption cases until an effective abandonment of parental rights is shown. Were the rule otherwise, and an indiscriminate sanction of the dispossession of parental rights without consent were attempted, serious constitutional impedimenta no doubt would loom large under the due process clause.

Perhaps this court has traveled as far as any in giving expression to the type of abandonment intended to exist in order to sever parental ties when we said in a custody case, that

"abandonment, in such cases, ordinarily means that the parent has placed the child on some doorstep or left it in some convenient place in the hope that some one will find it and take charge of it, or has abandoned it entirely to chance or fate."[11]

Hardly can it be said that F, under the facts of this case, was shown to have evinced a settled purpose to desert, of the type required by the authorities in order to terminate parental rights.

---

[8]*Smith* v. *Smith*, 1947, 67 Idaho 349, 180 P.2d 853; In re Kelly, supra.

[9]In re Strauser, supra.

[10]In re Susko, 1949, 363 Pa. 78, 69 A.2d 132; In re Strauser, supra; In re Lease, 1918, 99 Wash. 413, 169 P. 816.

[11]*Jensen* v. *Earley*, 1924, 63 Utah 604, 228 P. 217.

W urges also that F judicially was determined to have deserted his boys, in a 1948 hearing, and hence his consent is unnecessary. W brought a proceeding at that time, alleged desertion and nonsupport and prayed ■ for custody of the boys. F was served in Arkansas, but he testified his failure to appear in that action resulted from financial difficulties. In F's absence, the custody of the boys was awarded to W

"to the exclusion of the defendant who shall have no right to see, visit with, or otherwise exercise any paternal rights to said children *unless and until the defendant shall have made application to this court for permission so to do and shall have made proper provision for the support and maintenance of said minor children by defendant.*"

This language in the decree plus a finding by the court that "the facts set forth in said petition are true," W asserts, constituted a judicial determination of desertion, dispensing with F's consent. We disagree. The decree is conditional, and recognizes parental rights in F who, by its terms, can assert such rights by performance of the conditions. The divestment of paternal rights by desertion must be of *all* such rights, and any adoption purporting to transfer *all* such rights would fly in the teeth of the custody decree itself wherein rights were reserved conditionally to F,—which inconsistent procedure the authorities will not permit.[12] To be effective in dispensing with F's consent, proof in the adoption proceeding itself would have had to justify such result. This, as we concluded above, was not accomplished under the facts of this case.

WOLFE, C. J., and McDONOUGH and WADE, JJ., concur.

---

[12]In re Jackson, supra; In re Lease, supra; *Smith* v. *Smith*, supra.

CROCKETT, Justice (concurring).

I concur with the prevailing opinion but add this observation: Section 78-30-4, U.C.A.1953, provides that a child

"cannot be adopted without the consent of its parents, * * * except that consent is not necessary from a father or mother who has been judicially deprived of the custody of the child on account of cruelty, neglect or desertion * * *."

Appellant urges that on the basis of the divorce decree and the 1948 proceeding supplementary to it that all of Mr. Walton's parental rights were extinguished, so that his consent is not necessary and that he now has no standing to oppose the adoption. It is my opinion that the above quoted statute does not apply where the cruelty, desertion or neglect is proved against the spouse in a divorce proceeding.[1] The adversary there is the spouse and the cruelty, desertion or neglect is primarily as to the other spouse, even though such facts may be shown as to the children or the home incidentally. A husband, for instance, may fail to meet and disprove such issue as to his spouse or the home, whereas both the facts and the proof might be quite different if the direct accusation were cruelty, desertion or neglect of the children themselves.

I believe the statute referred to was only intended to cover situations where the parent has been judicially deprived of the custody of the child on account of cruelty, neglect or desertion of the child in a proceeding wherein the issue was as to such treatment of the child itself,[2]

---

[1] See *Bell* v. *Krauss*, 169 Cal. 387, 146 P. 874; In re Metzger, 114 Misc. 313, 186 N.Y.S. 269. As to requirement of notice of hearing on judicial deprivation of parental rights, see 1 Am.Jur. 644 ff.; 24 A.L.R. 424; 76 A.L.R. 1081.

[2] Some statutes distinguish between a divorce action and a proceeding wherein a parent's fitness to have the custody of his child is directly in issue. Idaho Code, § 16-1504 (1948); N.Y.Dom.Rel.Law, § 111, McKinney 1941; see Iowa Code Annotated, § 600.3; Cal.Civ.Code, § 224 (Deering 1941).

for example, one in the interest of neglected, deserted or dependent children before the juvenile court,[3] but that where one spouse has merely been awarded custody in a divorce action, such statute has no application.

[3] 55-10-30 U.C.A.1953; See 55-10-5 & 55-10-32 U.C.A.1953.