335 P.2d 573

Joseph J. NEVELOS and Nelda E. Nevelos, Petitioners-Appellees,

v.

James C. RAILSTON, Respondent-Appellant.

No. 6440.

Supreme Court of New Mexico.

Feb. 9, 1959.

Smith & Kiker, Oscar H. Beasley, Albuquerque, for appellant.

No appearance for appellees.

CARMODY, Justice.

This is an adoption proceeding in which the mother of two minor children and her

second husband filed a petition to adopt the children and the natural father has opposed the proceeding.

After a hearing, the district court of Socorro County entered an order dispensing with the consent of the father, and immediately thereafter entered decrees of adoption as to the children. Actually, the appeal is taken from the decrees of adoption, although basically it is contended that the court should not have entered its order dispensing with the natural father's consent, and therefore that the orders granting adoption are invalid.

The appellant father, after docketing his appeal in this court, filed his brief. However, unfortunately, the mother and step-father as normal appellees have failed to enter an appearance and no brief is filed herein. With this situation, the court could perhaps dispose of the question involved with considerable brevity; but by reason of the fact that this particular point has never been ruled upon in New Mexico, it was felt that a thorough study should be made and the issue set at rest.

The parents of the children were married in August of 1948 and resided in New Mexico until their divorce in March of 1954 except for approximately three years when the appellant was employed in Mexico. During the marriage the two children were born, and at the time of the decree of divorce the mother was granted custody with right of reasonable visitation on the part of the father and without any provision for child support. Approximately five months after the divorce, the mother of the children married her present husband, he being then in the Armed Forces of the United States in which he remained until about the month of September, 1956, when the family moved to Socorro and lived there.

The mother of the children is a trained nurse and was employed at all times subsequent to the divorce up until the time of the hearing of the within cause. During the first year following the divorce, the appellant visited the children regularly but thereafter he moved to Arizona and then to California, however returning on two occasions to visit the children, although after the second husband commenced living in Socorro the appellant was not allowed to visit the children except in the presence of their mother and step-father. On one occasion while in California, appellant attempted to talk to the children on the telephone and was denied the right. Appellant also made other attempts to see the children, refused to consent to the adoption by the step-father, and employed counsel to aid him in contesting the adoption.

Appellant at no time contributed anything toward the support of the children other than perhaps sending or giving them toys, and during Christmastime of 1954 he purchased approximately $70 worth of clothing for the children. Neither the mother

nor the step-father have ever requested appellant to contribute toward the support of the children, and the step-father stated he did not want him to contribute. During the entire period, the children were not neglected and were actually well provided for. According to the appellant's testimony, he was at all times willing to contribute to the children if there was a need, but he was of the opinion that it would be better if he were to be allowed to set up something in the nature of a trust fund for the use of the children's future education, rather than paying support money, if required, to the mother.

Following the hearing, the appellant filed requested findings of fact and conclusions of law, and these were in no way ruled upon by the court. However, five days after the same were filed, the court entered its order dispensing with the consent, making one general finding only, as follows:

"That the written consent of James Ralston, the father of the minors named in the petition, should be dispensed with."

On the same day, decrees of adoption for each of the children were filed.

Under this situation, it cannot be determined upon what exact basis the trial court based its order dispensing with the consent of the natural father. The statute which permits the trial court to dispense with written consent is § 22–2–6, New Mexico Statutes Annotated 1953, as follows:

"The consent of any person required by the terms of section 5 [22–2–5], other than that of the child over 12 years of age, may, in the discretion of the court, be dispensed with in any one or more of the following instances:

"(a) In the case of a parent when he or she has been lawfully deprived of the custody of the child through divorce or legal separation;

"(b) When he or she has been deprived of custody of the child by a court of competent jurisdiction in proceedings under or like in substance to those prescribed by chapter 85 of the Laws of 1917 (being sections 44–201 to 44–211, inclusive, of the 1941 Compilation, as amended [13–9–1 to 13–9–11]) being the law of this state relating to dependent and neglected children;

"(c) When consent of the guardian of the person of the child, under appointment of a court of competent jurisdiction, is filed;

"(d) After diligent search and inquiry, the names of the parent or parents or legal guardian, or their whereabouts, are unknown and cannot be ascertained; or where the parent or parents or guardian have wilfully failed to maintain and support the child, when obligated and financially able to do so, or have been guilty of such cruelty, depravity, abuse, or gross neglect to-

ward the child that, in the opinion of the court, the child should be removed from the custody of such parent or guardian.

\* \* \* \* \* \*

"At such hearing, the court may hear evidence and either require or dispense with such consent according to law."

Quite obviously, subparagraphs (b) and (c) have no application to this case in any sense. Also, subparagraph (a) could not have been considered by the trial court as a basis for dispensing with the father's consent, in view of the holding of this court in Onsrud v. Lehman, 1952, 56 N.M. 289, 243 P.2d 600. The only difference in the two cases being that in Onsrud v. Lehman the divorce therein considered was based upon the grounds of cruelty, and here the divorce was based upon the grounds of incompatibility. Therefore, it would appear that the trial court of necessity must have based his ruling on subparagraph (d).

There is no evidence in the record that the appellant was ever guilty of cruelty, depravity, abuse or gross neglect toward the children, and for this reason it follows that the trial judge must have based his ruling on the clause of the statute, "or where the parent or parents or guardian have wilfully failed to maintain and support the child, when obligated and financially able to do so."

It is the established policy in New Mexico that the proper construction of our adoption statutes is such as will promote the welfare of children. Ex parte Wallace, 1920, 26 N.M. 181, 190 P. 1020; Blanchard v. State ex rel. Wallace, 1925, 30 N.M. 459, 238 P. 1004; Heirich v. Howe, 1946, 50 N.M. 90, 171 P.2d 312. Nevertheless, it must always be remembered that before the court can properly consider the merits of an adoption proceeding as to the welfare of the children, the question of the consent or the waiver thereof on behalf of the natural parent must be determined. Actually, the court has no right to consider the merits or demerits of an adoption petition insofar as it concerns the welfare of a child, unless it has in the first instance determined that the consent of a natural parent may be dispensed with. In re Adoption of Susko, 1949, 363 Pa. 78, 69 A.2d 132; In re Adoption of Strauser, 1948, 65 Wyo. 98, 196 P.2d 862; In re Lease, 1918, 99 Wash. 413, 169 P. 816; In re Cozza, 1912, 163 Cal. 514, 126 P. 161, Ann.Cas.1914A, 214.

The relationship between parent and child is a bundle of human rights of such fundamental importance that it is generally held that consent is at the very foundation of adoption statutes and that adoption statutes being in derogation of common law are to be construed strictly in favor of the parent and the preservation of the relationship. In re Adams, Mo.App.1952, 248 S.W.2d 63;

In re Cattalini, 1946, 72 Cal.App.2d 662, 165 P.2d 250; In re Cozza, supra; and People ex rel. Cocuzza v. Cobb, 1950, 196 Misc. 961, 94 N.Y.S.2d 616.

There appear to be cases from almost every jurisdiction that have considered questions similar to that in issue. Naturally, the exact verbage of the various statutes varies, most of them using the words "abandonment" or "desertion" rather than the words of our statute above quoted. Running through all of the cases, there seems to be a general trend that failure to support or allowing others to assume the burden is a factor tending to establish abandonment, but only when linked with other circumstances.

Referring again to the section noted, we cannot fail but note that the word "wilfully" is used, and it is extremely difficult to conceive of how under the facts as presented to the trial court there was shown a wilful failure on the part of appellant to maintain and support the children. He was never ordered to support them, his former wife did not ask him for support, and her present husband stated that he did not want the support. Of course, the appellant has a legal and moral obligation to support his children, but our legislature in utilizing the word "wilfully" in the above statute must have intended something more than a mere failure to support. The word "wilfully" as usually construed denotes a bad purpose. Chi-

cago, St. L. & P. R. Co. v. Nash, 1891, 1 Ind.App. 298, 27 N.E. 564; Thompson v. Hays, 8 Cir., 1926, 11 F.2d 244; Weatherall v. Brown, 1917, 113 Miss. 887, 74 So. 765; Parker v. Parker, 1897, 102 Iowa 500, 71 N.W. 421. See also Adoption of Wedl, Ohio Prob., 114 N.E.2d 311, 314, in which case the court construed a statute very similar to ours and held that, on somewhat comparable facts, there was not a wilful failure to properly support and maintain a child. The court in discussing the matter referred to previous Ohio cases as to the definition of the word "wilful" and stated that the closest synonym is "intentional" or "an intentional omission of a duty."

The Utah adoption statute, U.C.A.1953, 78–30–1 et seq., uses the word "deserted"; however, under very similar facts to those in the instant case, the supreme court of that state in In re Adoption of Walton, 1953, 123 Utah 380, 259 P.2d 881, 883, held that the evidence did not establish the necessary intent upon the father of the children to desert them. The Utah court, in a very able opinion, delves into the background as to the hesitancy of courts to lightly sever the relationship between a natural parent and a child, the court stating that, in essence, to sever the relationship of parent and child there must be an intent to sever all correlative rights and duties incident to the relationship, and that such intent must be proved, not only by a preponderance of

the evidence but by evidence which is clear and satisfactory, something almost akin to proof beyond a reasonable doubt, or by "clear and indubitable evidence." See In re Kelly, 25 Cal.App. 651, 145 P. 156. The Supreme Court of Utah, in discussing this matter in the Walton case, supra, states:

"So jealously guarded is the parent-child relation that uniformly it is held that the abandonment or desertion firmly must be established by the type of proof we mention, before any question as to the best interests or welfare of the child can be the subject of inquiry. The importance of preserving the relationship clearly is pointed up when one considers the well-established concept that custody may be awarded in a proper case, while the courts may have no power to sever the relationship,—accounting for the principle that the welfare of the child is of great importance in custody cases, but quite immaterial in adoption cases until an effective abandonment of parental rights is shown. Were the rule otherwise, and an indiscriminate sanction of the dispossession of parental rights without consent were attempted, serious constitutional impedimenta no doubt would loom large under the due process clause."

Without unduly lengthening this opinion, it may be stated that, with perhaps one or two exceptions, the courts of this country are unanimous in ruling on facts such as these here that the court is not warranted in dispensing with the consent of a natural parent. See annotation, 35 A.L.R.2d 662, wherein will be found cases from a great many jurisdictions dealing with this particular point.

The learned trial judge, who has had a wealth of experience in matters dealing with children, undoubtedly felt that he was acting in the best interests of the children. However, in viewing the evidence as a whole, we must rule that the order entered dispensing with the consent of the appellant was done so improperly and the orders of adoption should therefore not have been promulgated. Actually, in this case the court does not feel reluctant to rule as it has, inasmuch as the children will apparently still stay with their mother and their step-father, although they will retain their original name. Should the mother desire assistance in the maintenance of the children or in making provision for their future education, it is certaintly her right and duty to present the matter to the court having jurisdiction in the divorce case and obtain her relief there.

Even though by its ruling the appellant has prevailed in this court, still we feel that it is little enough to ask him to assume the burden of the costs involved. The case will be reversed, with directions to the district

court to set aside the orders of adoption and the order dispensing with the consent of the appellant, and to dismiss the cause; and it is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SADLER, J., not participating.