In the Matter of the ADOPTION OF Regina Mae JONES, a minor child.

No. 49431.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 28, 1976.

Rehearing Denied Oct. 12, 1976.

Certiorari Denied Dec. 8, 1976.

Released for Publication by Order of Court of Appeals Dec. 9, 1976.

Benjamin J. Curtis, Poteau, for appellant.

Sullivan & Sanders by Mike Sullivan, Poteau, for appellees.

REYNOLDS, Presiding Judge:

This appeal is from an order overruling appellant's motion to vacate a final decree of adoption. The Court of Appeals, Division No. 1, in Case No. 48,122 previously reversed the sustention of a demurrer to appellant's evidence in this cause.

The appellant is Sharon Kay Morgan, the natural mother of Regina Mae Jones. Sharon was raped and became pregnant by her stepfather when she was fourteen and living in California. Sharon, her baby and her sister moved to Oklahoma from California when the baby was 4 months old, to live with the Mackeys, Sharon's aunt and uncle. These three minors were placed in the temporary custody of the Mackeys by court order. They all lived there until Sharon was 18 years old, or for about three years. By a decree dated January 24, 1973, Regina Mae Jones was adopted by Lydia Elenda Mackey and Louis Denver Mackey. On April 12, 1974, Sharon married James Morgan. He owned his own home and has established a successful business. Shortly thereafter (May 31, 1974) this action was filed to vacate the adoption decree on the grounds that the

necessary consent was obtained by fraud, duress and undue influence.

While living with her custodial parents Sharon was kept in a continual state of fear over the possibility of her stepfather appearing, taking her baby and harming her. She testified that she thought the only thing happening in court during the adoption proceedings was a name change, and that when she was married the child would be returned to her. The child actually was returned to her for a few days after her marriage and thereafter further custody was denied.

Sharon Morgan's misunderstanding of the effect of the adoption proceeding may be explained by the rapidity of the proceedings which we have previously noted in our opinion in Case No. 48,122 dated September 30, 1975. We explained that the Mackeys filed an adoption petition on the 24th of January, 1974. The natural mother's consent bore the same date and on that date the trial judge examined the petition, heard the evidence, waived the six month waiting period, waived the investigator's report and then entered a final decree of adoption.

The right of the natural parent to seek revocation of the consent to adoption on the grounds of fraud, undue influence and intimidation, notwithstanding the provisions of 10 O.S.Supp.1973, § 60.10, has been settled since the Supreme Court held in *In Re Adoption of Graves,* 481 P.2d 136 (Okl.1971), that the provisions of 12 O.S. 1971, § 95, Sub. 6 are declarative of the common law, and are not to be struck down by an inference created from the passage of a new statute.

An adoption is primarily a matter of contract between the parties whose consent is required although the sanction of a judicial officer is required. *Laffoon v. Hayden,* 337 P.2d 736 (Okl.1959). An examination of the transcript does not reveal that at any time there was the meeting of the minds of the parties involved necessary to constitute an acceptance of the offer to adopt the child. We have above discussed Sharon's explanation of her consent as a fraudulently induced misunderstanding encouraged by veiled threats of harm to follow in the event the "safe" alternative of giving the child another name was not agreed to. Influence which arises out of affection, confidence and gratitude is natural and lawful. It is only where (as here) the influence is such as will confuse the judgment, coerce or control one's will that it becomes undue influence.

10 O.S.1971, § 60.13 provides as follows:

"(1) Upon the filing of a petition for adoption, the court shall order an investigation to be made (a) by the agency having custody or legal guardianship of the child, or (b) in other cases, by the State Department of Public Welfare, or (c) by a person qualified by training or experience, designated by the court, and shall further order that a report of such investigation shall be filed with the court by the designated investigator within the time fixed by the court and in no event more than sixty (60) days from the issuance of the order for investigation, unless time therefor is extended by the court. Such investigation shall include the conditions and antecedents of the child for the purpose of determining whether he is a proper subject for adoption; appropriate inquiry to determine whether the proposed home is a suitable one for the child; and any other circumstances and conditions which may have a bearing on the adoption and of which the court should have knowledge; and, in this entire matter of investigation, the court is specifically authorized to exercise judicial knowledge.

"(2) The court may order agencies named in subsection (1) of this section located in one or more counties to make separate investigations on separate parts of the inquiry, as may be appropriate.

"(3) The report of such investigation shall become a part of the files in the case and shall contain a definite recom-

mendation for or against the proposed adoption and state reasons therefor.

"Provided, that if the child petitioned to be adopted shall be the natural or adopted child of either of the petitioners then no investigation shall be made."

The clear intent of 10 O.S.1971, § 60.13 is that an investigation is required before an interlocutory decree is entered. We note the statute says: "Upon the filing of a petition for adoption, the court *shall* order an investigation to be made." (Emphasis ours.) Sub-section (3) of that statute requires that the report ". . . shall contain a definite recommendation for or against the *proposed* adoption . . . ." (Emphasis ours.)

10 O.S.1971, § 60.14 and § 60.15 both pre-suppose the existence of a report as required in § 60.13. The only limitation on the necessity of a report is contained in the last paragraph proviso of § 60.13 and is not in point here.

■■ The word "shall" is not connotative of a permissive mandate such as the word "may." Shall has been held to mean "must" and not merely to designate a discretionary act. *Eason Oil Co. v. Corporation Commission,* 535 P.2d 283 (Okl.1975); *Oklahoma Alcoholic Beverage Control Board v. Moss,* 509 P.2d 666 (Okl.1973); and *State ex rel. Ogden v. Hunt,* 286 P.2d 1088 (Okl.1955). An investigation made after an adoption decree has been entered does not comply with the statute nor does it satisfy the requirement providing that a report shall be made prior to the entry of a decree. The intent of the legislature is obvious from the requirement that the report contain a definite recommendation for or against the proposed adoption. The report of necessity must be made before the entry of an interlocutory or final decree. That this was not done in this action is undisputed and of necessity one statutory requirement for a valid adoption was not complied with here.

■■ The validity of an adoption proceeding in this state is strictly construed in favor of the rights of the natural parents, and the welfare of the child cannot be ignored in this consideration of validity. *In re Adoption of Graves,* 481 P.2d 136 (Okl. 1971); *Conville v. Bakke,* 400 P.2d 179 (Okl.1965).

Strictly construed in favor of the natural parent, the adoption is not valid for failure to follow the clear mandate of the controlling statutes. The adoption decree is accordingly vacated, and the child Regina Mae Jones is ordered returned to her natural mother, Sharon Kay Morgan.

REVERSED.

BOX and ROMANG, JJ., concur.