In the Matter of the ADOPTION
OF LORI GAY W.

BETTE J. W., Appellant,

v.

KITTY LOUISE S. and Robert D.
W., Appellees.

No. 49807.

Supreme Court of Oklahoma.

Oct. 24, 1978.

Rehearing Denied Feb. 1, 1979.

Albert W. Murry, Arthur L. Dyer, Jr., Oklahoma City, for appellant.

Paul McKinney, Joseph E. McKimmey, Shawnee, for appellees.

IRWIN, Justice.

Appellee (Kitty) is the daughter of appellant (Bette) and appellee (Robert). Kitty is the natural mother of a minor girl (Lori) who was adopted by Bette and Robert. The decree of adoption was entered on February 28, 1972. On March 22, 1976, Kitty commenced proceedings to vacate the adoption decree based upon fraud. Kitty admits she discovered the alleged fraud in July, 1974.

The primary issue presented is whether the one (1) year or two (2) year period of limitations was applicable. The trial court determined that the two year period was applicable and rendered judgment vacating the adoption decree based upon a finding that Kitty's action was brought within two years of the discovery of the fraud. Bette appealed. Robert, since divorced from Bette, did not challenge the proceedings to set aside.

Kitty was seventeen years old when Lori was born out of wedlock in July, 1968. Kitty and Lori lived with Bette and Robert for approximately two and one half years following Lori's birth and during that time Bette and Robert exerted considerable pressure upon Kitty to allow them to adopt Lori. Kitty eventually consented so that Lori would have a complete birth certificate, medical and health insurance, and the advantages of a two parent home. Additionally Bette promised that Kitty's parental rights would be restored when Kitty married a man acceptable to Bette and Robert. Kitty consented to the adoption of Lori in November, 1971, with all the necessary court formalities.

After the petition for adoption was filed and before the final decree was entered in February, 1972, Kitty married a husband of whom Bette and Robert approved. Kitty testified she asked for return of Lori right

after her marriage and before the final decree of adoption was entered. She further testified for 2 and ½ years after the decree of adoption was entered her efforts to regain Lori were thwarted by one excuse after another and that Bette would always tell her to wait for a better time. Finally in July 1974, Bette told Kitty that she would never relinquish Lori, and had never intended to do so. This, claims Kitty, is the first time she knew of Bette's fraudulent intention and conduct to keep the child.

The gist of Kitty's petition to vacate the adoption decree was that her consent to adoption was obtained by reason of the fraudulent conduct of Bette and that Bette continued her fraudulent conduct in that she kept promising her that the adoption would be vacated and her parental rights restored as soon as Kitty could properly care for Lori.

Bette contends that the one year limitation period prescribed by 10 O.S.1971, § 58, is applicable and it effectively bars Kitty's action to set aside the adoption decree. Sec. 58, which was enacted in 1971, provides:

"No adoption may be challenged on any ground either by a direct or collateral attack more than one (1) year after the entry of the final adoption decree regardless of whether the decree is void or voidable, and the minority of the natural parent shall not operate to prevent this time limit from running."

Kitty relies upon 12 O.S.1971, § 95 (third) which provides a two year limitation for "An action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." Kitty argues that since she did not discover until July 1974, that Bette did not intend and had never intended to let her have Lori, that her action to vacate the adoption decree based upon fraud was timely commenced within the 2 year limitation period.

Prior to the enactment of 10 O.S.1971, § 58, and the amendment of 12 O.S.1961, § 95 in 1971 (See 1971 Session Laws, Ch. 316, Pgs. 800–802) limitations for proceedings to vacate or set aside decrees of adoption were governed by 12 O.S.1961, § 95 (sixth) which provided:

"An action or proceeding which seeks to vacate, cancel or otherwise attack or to avoid a decree of adoption, directly or collaterally, except in the case of extrinsic fraud shall be brought within one (1) year from the date of the entry of decree;
\* \* \*"

The above limitations proviso was deleted by the 1971 amendment to sec. 95, supra, in the same legislative enactment in which sec. 58, supra, was enacted.

Kitty cites *In Re Adoption of Graves*, Okl., 481 P.2d 136 (1971); and *In Matter of Adoption of Jones*, Okl.App., 558 P.2d 422 (1976), as holding that our former statute (sec. 95 [sixth]), repealed in 1971, which granted natural parents the right to set aside an adoption decree obtained by fraud, was purely a declaration of the common law. Kitty argues that "fraud remains grounds for revoking a decree of adoption; that the repeal of title 12 O.S.1961, § 95 (sixth), did not remove fraud as grounds for withdrawal of consent, or revocation, nor did the passage of title 10 O.S.1971, § 58 strike down the common law rights of the natural parent to bring an action to set aside a decree of adoption within the period of time prescribed in 12 O.S.1971, § 95 (third), two years on grounds of fraud."

When 12 O.S.1971, § 95, is considered in connection with 12 O.S.1971, Chapter 16, relating to "Vacation and Modification of Judgments by Trial Court" and in particular 12 O.S.1971, §§ 1031 and 1038, it is apparent that 12 O.S.1971, § 95 (third) is not applicable in these proceedings or in any other proceedings which are commenced to vacate or set aside a judgment based upon fraud. Sec. 95, supra, relates to limitations of civil actions other than for the recovery of real property, and, generally speaking, relates to an initial action where a litigant seeks to obtain a judgment. After the deletion of the limitation period for attacking adoption proceedings in 1971, sec. 95, contains no language relating to

vacating or otherwise challenging judgments that have already been entered.

On the other hand a proceeding to vacate a final decree of adoption is within the purview of 12 O.S.1971, § 1031 (fourth) which specifically provides for the vacation or modification of judgments or orders "for fraud practiced by the successful party, in obtaining the judgment or order." Although 10 O.S.1971, § 58, since its enactment in 1971, is the only limitation statute specifically mentioning adoption decrees, sec. 58 makes no attempt to set forth any grounds upon which a decree of adoption may be challenged or attacked. Sec. 58 is a statute of limitation. Fraud, under sec. 1031 (fourth) remains a viable statutory ground for vacating an adoption decree.

12 O.S.1971, § 1038 is a general statute of limitation applicable to proceedings brought under sec. 1031, supra. It provides that proceedings to vacate or modify judgments or orders based upon fraud "must be commenced within two years after the judgment was rendered or order made, * * *". And, where it is alleged that a judgment was procured by fraud, it may be attacked within two years from the date such fraud was discovered or should have been discovered by the exercise of reasonable diligence. *Westbrook v. Dierks*, Okl., 292 P.2d 172 (1955). It necessarily follows that the applicable statute of limitations in these proceedings is either 10 O.S. 1971, § 58, or 12 O.S.1971, § 1038, and not 12 O.S.1971, § 95 (third). This holding does not alter the primary issue presented, i. e., is the one year limitations of 12 O.S.1971, § 1038, controlling in vacating or setting aside an adoption decree based upon fraud?

10 O.S.1971, § 58 states in sweeping terms that "no adoption", whether the subject of a "direct or collateral attack" may be challenged more than one (1) year after the entry of the final decree whether the "decree is void or voidable". By repealing 12 O.S.1961, § 95 (sixth) and enacting 10 O.S.1971, § 58, in the same enactment in 1971, it is evident the Legislature intended to bar, within *constitutional limitations*,[1] any proceedings attacking a final adoption decree more than one (1) year after the decree is entered. We used the words "within constitutional limitations" because it is elementary that sec. 58, is subject to the constitutional limitations of the United States and Oklahoma Constitutions and must not be interpreted so as to bar proceedings beyond the one year period where the question of due process of law is timely presented even though more than one year has expired after the adoption decree was entered. The Supreme Court of the United States in *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62, in considering the basic requirements concerning due process in an adoption proceeding reversed and remanded to a Texas court an adoption proceeding on the grounds that the failure to notify the divorced father of the pendency of the proceedings deprived him of due process of law and rendered the decree constitutionally invalid. The Supreme Court of Colorado in *White v. Davis*, 163 Colo. 122, 428 P.2d 909 (1967), interpreted its limitations statutes for challenging adoption decrees in somewhat the same way we interpreted sec. 58, in order to uphold its constitutionality. The Colorado court said: "This statute * * * clearly serves the beneficial purpose of curing such defects which are technical and do not affect the basic rights of the parties. The statute further serves the purpose of guaranteeing to adopting parents the undisturbed relationship with the child, which was one of the legislative intents."

After the 1971 amendment of 12 O.S. 1961, § 95, the only statute specifically prescribing a limitation period for challenging adoption decrees is 10 O.S.1971, § 58, which

---

1. Neither in the trial court nor on appeal have appellees challenged the constitutionality of § 58, supra, under the State or Federal Constitutions. Where the record clearly shows that the question of the constitutionality of an act of the Legislature was not presented to the trial court, and no reference to the constitutionality of the act of the Legislature in question appears in the record, such question will not be considered on appeal by this Court. *Birmingham Fire Insurance Company v. Bond*, Okl., 301 P.2d 361 (1956).

is part of our adoption statutes. If the one year period of limitations prescribed by sec. 58, is not applicable to proceedings to vacate an adoption decree based upon fraud, it necessarily follows that the two year period prescribed by sec. 1038 is controlling. A fortiori, if sec. 1038 is controlling in proceedings based upon fraud, the two year period would also be controlling in a proceeding to vacate an adoption decree under 12 O.S.1971, § 1031 (seventh), "For unavoidable casualty or misfortune, preventing the party from prosecuting or defending." The Legislature, when it repealed 12 O.S.1961, § 95 (sixth) and enacted 10 O.S.1971, § 58, in the same enactment, did not intend to enlarge the time for challenging final adoption decrees but intended to shorten the time. In *Reubin v. Thompson*, Okl., 406 P.2d 263 (1965), we said:

"A statute which is enacted for the primary purpose of dealing with a particular subject, and which prescribes the terms and conditions of that particular subject matter, prevails over a general statute which does not refer to the particular subject matter, but does contain language which might be broad enough to cover the subject matter if the special statute was not in existence.

Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute applies to the subject matter, and that the general statute does not apply."

■ We hold that the specific statute on limitations for vacating an adoption decree, 10 O.S.1971, sec. 58, controls over the general statute, 12 O.S.1971, sec. 1038.

■ When the adoption decree was entered the trial court had jurisdiction of the parties and the subject matter, and the power to enter the decree. The decree was in no sense void, but merely voidable. Under sec. 58, supra, it would not be subject to attack more than one (1) year after its entry which was in February, 1972, unless some factual circumstance or legal impediment prevented the limitations from running.

■ As positive as the language of § 58, supra, may be, we recognize an exception to its operation which is well illustrated by the present case. There is a general rule, well accepted in this jurisdiction, relating to statutes of limitations which states that if a person induces another to let the limitations period expire, and if such inducement is of such a character as to make it iniquitous to permit the limitations statute to act as a bar, the defendant will be estopped to assert the statute. *Bowman v. Oklahoma Natural Gas Company*, Okl., 385 P.2d 440 (1963); *Douglass v. Douglass*, 199 Okl. 519, 188 P.2d 221 (1947). The *Douglas* case, for example, involved a confidential relationship existing between a father and son wherein the son exerted his influence over the father to secure his forebearance in seeking recovery on a note and mortgage on which the son was indebted. In *Douglass*, supra, the Court said:

" * * * In order to estop a person from pleading the statute of limitations it is not necessary for such person to agree not to urge it, but it is sufficient if his conduct or promises are such as are naturally calculated to and do 'induce plaintiff into a belief that his claim would be adjusted if he did not sue.' "

The Delaware Supreme Court in *Lieberman v. First National Bank*, 8 Del.Ch. 519, 45 A. 901, in considering whether the fraudulent concealment of the existence of a cause of action would hinder the operation of the statute of limitations until discovery said:

" * * * if one by fraud conceals the fact of a right of action, it is not ingrafting an exception on the statute to say that he is not protected thereby, but it is simply saying that he never was within the statute, since its protection was never designed for such as he. By fraud, he has put himself outside of its pale. Whether this be taken as an exception, or only a limitation of the statute, it rests upon sound reason and just policy."

In the case at bar Kitty admits that in July, 1974, Bette told her that she would not release Lori and the trial court concluded that Kitty "was not aware and could not have become aware, through the exercise of due diligence, of the fraud practiced upon her until July, 1974". We conclude that Kitty became aware of Bette's fraudulent conduct in July, 1974. It would be iniquitous to permit the statute of limitations to run in favor of Bette prior to July, 1974, because 10 O.S.1971, § 58, was not designed to protect such fraudulent conduct. However, the one-year limitations period prescribed by sec. 58, did commence to run in July, 1974, and Kitty failed to commence her proceedings to vacate within one year thereafter. At the time Kitty commenced the vacation proceedings in March, 1976, such proceedings were barred by the one-year limitations prescribed by 10 O.S.1971, § 58. The trial court erroneously held that a two year limitations period is applicable in proceedings to vacate a final adoption decree based upon fraud.

Judgment for costs granted appellant.

REVERSED AND REMANDED.

HODGES, C. J., LAVENDER, V. C. J., and BERRY and HARGRAVE, JJ., concur.

WILLIAMS, BARNES, SIMMS and DOOLIN, JJ., dissent.

DOOLIN, Justice, dissenting:

The United States Supreme Court in *Stanley v. Illinois*, 405 U.S. 645, 650, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972) stated: "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and 'rights far more precious than property rights.'" 10 O.S.1971 § 58 should not be used to support a policy that flies in the face of this positive mandate.

In this case the trial court, who took Kitty's appearance and consent to adoption, specifically found the evidence was clear and convincing that the adoption was procured through fraud, deceit and misrepresentation, and without the jurisdictional prerequisite of a valid consent. The court also found the best interests of Lori would be served by returning her to Kitty and her husband. It concluded the common law remedy predicated on fraud survived the enactment of § 58 which should be limited to void and voidable decrees *other than those obtained through fraud.*

The decision of the trial court is in line with the reasoning of this court expressed in *In re Adoption of Graves*, 481 P.2d 136 (Okl.1971) and *Adoption of Robin*, 571 P.2d 850 (Okl.1977), where we held adoption statutes must be strictly construed in favor of the rights of natural parents and that the welfare of the child is not to be ignored. In the *Graves* case the natural mother was attempting to withdraw her consent to the adoption of her child on the grounds it was procured by fraud. This court permitted the consent to be withdrawn in the face of 10 O.S.1961 § 60.10 which reads, "The entry of the interlocutory or final decree of adoption renders any consent irrevocable." We held 12 O.S.1961 § 95(6), then in force, gave a trial court jurisdiction to allow consent to be withdrawn on the basis of fraud even after the final decree had been issued. Although 12 O.S.1961 § 95, subd. 6, was repealed in 1971, eliminating the specific statute of limitations for vacation of an adoption decree on grounds other than extrinsic fraud, the *common law action for fraud should be available to natural parents for setting aside an adoption after entry of a final decree.* Similarly § 58, like § 60.10, must not be considered to have limited this remedy.

A statute should be given a sensible construction, bearing in mind the evils intended to be avoided.[1] The primary object of statutory construction is to ascertain legislative intent.[2] The obvious intent of the Oklahoma Legislature in adopting the one year limitation of § 58 was to protect innocent adoptive parents. As recognized by the majority, this section certainly serves

---

1. *A. M. F. Tubescope Co. v. Hatchel*, 547 P.2d 374 (Okl.1976).

2. *Midwest City v. Harris*, 561 P.2d 1357 (Okl. 1977).

the purpose of curing technical defects that do not affect the basic rights of the parties and guaranties to adopting parents an undisturbed relationship. It is a desirable piece of legislation designed to assure adoptive parents that an unknown natural parent cannot come forward to "change his mind". It was not designed with the intent to protect adoptive parents who act out a clear course of fraudulent behavior in intimidation and coercion and outright lies such as practiced by Bette in this case.

Here we are not concerned with the rights of "innocent" adoptive parents. Bette is not a blameless third person who, in good faith and with honesty, adopted a child. Bette not only defrauded her daughter Kitty, she lied and misled the trial court as to the basis of Kitty's consent to the adoption. Because of the fraud she perpetrated, there are no public policy considerations which favor allowing this adoption to stand.[3] There is no circumstance which necessitates Bette's protection under the one year limitation of § 58. To the contrary, public policy would dictate that such grace period be extended if the decree is granted on the basis of fraudulently obtained consent. Where fraud exists, that would authorize a court to vacate an order, and when such fraud is discovered at a time when statutory remedies are unavailable, relief may be had in equity. *Red Eagle v. Cannon*, 198 Okl. 330, 177 P.2d 841 (1947).

No legal scheme is completely satisfactory in handling revocation of consent to adoption. Therefore it is essential the court apply its discretion wisely and well. Unless a mother has consented freely and understandingly, the court should not separate the child from its natural parent.[4] The trial court acted in its wisdom and within its power in setting aside Lori's adoption.

We are dealing here with legislation which involves one of the basic civil rights of man. Marriage and procreation are fundamental to the very existence and survival of the race.[5] Society does not permit forfeiture of real estate, automobile, contract rights or other property if fraud is involved. Section 58 as applied by the majority transgresses the purpose of its enaction. That purpose is protection of the blameless. It is immaterial whether or not Kitty participated in the deception. Fraud was practiced *on the court* to the detriment of Lori. The trial court found her best interests were served by her return to Kitty. Lori is certainly blameless. Her welfare must not be ignored.[6]

Section 58 as applied by the majority denies a child or his parent a hearing upon the question of whether the child was fraudulently taken from her mother. Proper construction of adoption statutes is such as will promote the welfare of the child.[7] The trial court's interpretation does this. The majority's does not.

12 O.S.1971 § 1038 allows an action to vacate an order on grounds of fraud to be commenced within two years after the judgment is rendered. Under this statute Kitty's action was timely filed. This limitation should control, not § 58.

I therefore dissent.

I am authorized to state that Justice WILLIAMS, Justice BARNES and Justice SIMMS concur in the views herein expressed.

**3.** *Adoption of Robin*, 571 P.2d 850, 857 (Okl. 1977).

**4.** See generally "Revocation of Parental Consent in Adoption Proceedings: Recent Developments" 8 Columbia Journal of Law and Social Problems 156, 178 (1972).

**5.** *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

**6.** *In re Adoption of Graves*, 481 P.2d 136 (Okl. 1971).

**7.** See *Nevelos v. Railston*, 65 N.M. 250, 335 P.2d 573 (1959).