903 P.2d 304 (1995)
In the Matter of C.J.S., K.L.S., and K.D.S., Minor Children.
Solomon TARIAH, Appellant,
v.
HANNAH'S PRAYER ADOPTION AGENCY, INC., Appellee.
No. 82618.
Supreme Court of Oklahoma.
June 27, 1995.
Rehearing Denied October 12, 1995.
Carl A. Barnes, Tulsa, for appellant.
John M. O'Connor, Blaine G. Frizzell, Newton & O'Connor, Tulsa, for appellee.
*305 SUMMERS, Justice.
When Terri S. gave up her three small children for adoption in 1991 she was not married to the man who now claims to be their father. The adoption proceeded without his consent. Solomon Tariah seeks to invalidate the proceedings, claiming a lack of due process by reason of insufficient notice. We conclude that the applicable statutes required no notice to Tariah, and that the statutes violate no constitutional right of his. The adoptions stand.
Terri S. is the biological mother of the three children, C.J.S., K.D.S. and K.L.S. Although she was married at the time the children were born, it is undisputed that the children were not fathered by her husband, as they had been separated for several years. C.J.S., a girl, was born in 1985; K.D.S. and K.L.S. are twin boys, born in 1987.
In 1990 Terri divorced her husband. Although the birth certificates name the husband as father, the divorce decree states that the husband is not the father of the three children.[1] In April 1991 Terri voluntarily relinquished her parental rights to the three children, placing them for adoption with the Hannah's Prayer Adoption Agency. Terri was told that the three children would not be separated, and from all indications in the record the children were placed together in a new home. A final decree of adoption was filed January 5, 1993.
At the hearing in which Terri relinquished her parental rights, she was asked about the father of the children. She stated that her husband was not the father, and that she did not know the identity of the father of the girl. As for the twins, she testified that she knew the identity of the father, but did not know his whereabouts as she had not seen or heard from him since before she knew she was pregnant.[2] She also testified that she *306 was the custodial parent of all the children, and that no other person had contributed to their financial well-being since their births. The court decided to give notice to the biological father, and determined that under the circumstances, publication notice was permissible.
A notice of the pending adoption was published in the Tulsa Daily Commerce, and was mailed general delivery to Terri's ex-husband and to "John Doe." The mailed notices were returned unclaimed. The publication notice, directed to the same individuals, stated the mother's name, the children's names and gave the time and date of the hearing on the pending adoption.
At the June 21, 1991 hearing neither "John Doe" nor Terri's ex-husband appeared to contest the adoption. The trial court determined that the children were eligible for adoption without the consent of the ex-husband or their birth fathers.[3] All of the children were adopted.
Eighteen months later Solomon Tariah filed an application to invalidate the adoption because it was conducted without his consent. He claims that he is the biological father of all three children, and that he was not given proper notice of the adoption proceedings. He asserts that the adoption should be vacated because Terri perpetrated a fraud on the court by stating that he was not the father of the oldest girl. He also states that the adoption of the twins without his consent is invalid because the publication notice did not state his name.
The trial court refused to invalidate the adoption proceedings. Tariah appealed and the Court of Appeals, Division 2, upheld the adoption proceedings as to the girl, but reversed and remanded for further proceedings as to the twins The basis of the opinion was that publication notice was proper as to C.J.S. because the mother testified that she did not know the identity of her father, but faulty as to the twins because the mother knew the identity of the biological father. Both parties sought certiorari. We have granted certiorari and now affirm the judgment of the trial court.

THE ADOPTION OF C.J.S.
Tariah first asserts that the adoption of C.J.S. should be invalidated because Terri perpetrated a fraud on the court by stating that she did not know the identity of C.J.S.'s biological father. Tariah asserts that he is the father and that Terri knew he was the father. Contrary to Tariah's assertion, Terri testified under oath that she did not know who was the father of C.J.S. The trial court heard Tariah's argument and declined to invalidate the adoption.
A stranger to the judgment roll of an adoption proceeding may bring an action to vacate the adoption decree if he or she possesses a legally protectible interest that is impaired by the decree. Matter of B.C., 749 P.2d 542, 544-545 (Okla. 1988); Wade v. Geren, 743 P.2d 1070, 1073-1074 (Okla. 1987). As we are about to explain, Tariah failed to show that he possessed an interest deserving of protection within the adoption proceeding, and we need not address his contention as to what Terri did or did not know.

STATUTORY RIGHT TO NOTICE
With regard to all three children, Tariah asserts that he was not given proper notice of the Section 29.1 hearing to terminate his parental rights, since his identity was known by the mother, but not disclosed. He does not dispute that notice by publication was given in conformance with 10 O.S. 1991 § 1131. Instead, he argues that the notice given was inadequate because it did not state his name.
*307 Title 10 O.S. 1991 § 29.1(B) lists certain persons who are entitled to notice before their parental rights can be terminated:
1. any person adjudicated by a court in this state to be the father of the child;
2. any person who is recorded on the child's birth certificate as the child's father;
3. any person who is openly living with the child and the child's mother at the time the proceeding is initiated or at the time the child was placed in the care of an authorized agency, and who is holding himself out to be the child's father;
4. any person who has been identified as the child's father by the mother in a sworn statement;
5. any person who was married to the child's mother within ten (10) months prior or subsequent to the birth of the child; and
6. any person who had filed with the paternity registry an instrument acknowledging paternity of the child, pursuant to Section 6 of this Act.
Notice for a Section 29.1 hearing is governed by Title 10 O.S. 1991 § 1131, which states that a court may permit notice by publication to a putative father "when the identity of the father or putative father of a child born out of wedlock is known but his whereabouts is unknown and the court, after inquiry, is satisfied that after diligent search his whereabouts remains unknown...."
Under Section 29.1(B), Tariah was not within the group of persons entitled to notice. He had not been adjudicated by a court as the children's father, was not-openly living with or married to the mother, was not listed on the birth certificate as the father, and did not hold himself out as the father at the time the proceedings were initiated. He had not been identified by the mother as the children's father and had not registered with the Centralized Paternity Registry. Our statute did not therefore entitle him to notice.
Inasmuch as he was not within the class of persons entitled to notice under Section 29.1 or Section 60.6, the publication notice authorized by the trial court was not required. Any defect in the publication notice is therefore immaterial as long as our statutes are constitutional. We must now consider whether the statutes afford due process as required by the 14th Amendment to the United States Constitution.

CONSTITUTIONAL RIGHT TO NOTICE
The United States Supreme Court addressed this issue in Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), and affirmed the notion that notice is not constitutionally required to a putative father in all circumstances. There a baby was born out of wedlock, and the mother later married a man who wanted to adopt the baby. The adoption proceeded without notice to the putative father. Shortly after the adoption was completed the putative father attempted to establish his paternity and to have the adoption invalidated. He argued that the adoption violated his right to due process because he was not given notice of the proceeding.
The Supreme Court disagreed, emphasizing that the rights of parents "are a counterpart of the responsibilities they have assumed." Id. at 257, 103 S.Ct. at 2991. The putative father may have due process rights when he has developed a parent-child relationship, but the mere act of fathering a child does not create a protected interest. Relying on three of its earlier cases, Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), reh. denied 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978); Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), the Court found that a potential parent-child relationship was deserving of less protection than one already developed.
When an unwed father demonstrates a full commitment to the responsibilities of parenthood by `com[ing] forward to participate in the rearing of his child,' Caban, 441 U.S. at 392, [99 S.Ct. at 1768], his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he `act[s] as a father toward his children.' Id. at 389, n. 7 [99 S.Ct. at 1766 n. 7]. But the mere existence of a biological *308 link does not merit equivalent constitutional protection.
Lehr at 261, 103 S.Ct. at 2993. In Stanley and Caban the biological father had established relationships with his children by assuming responsibility for them. The Court there found parental rights deserving of constitutional protection. However, in Quilloin the father had not legitimated the child. The Court found the adoption of the child by another man to be consistent with the Due Process Clause. The significance of the biological connection is that it gives the biological father an opportunity to develop a relationship the child. "If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie." Lehr at 262, 103 S.Ct. at 2994.
In reaching its decision in Lehr the Supreme Court also relied on New York's statutory scheme which set up a paternity registry. A putative father need only register to be entitled to notice of adoption proceedings. The father had not done so. The Court held that the "Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights." Id. at 265, 103 S.Ct. at 2995.
Lehr is very similar to the present case. The difference is that in the present case notice was given by publication, whereas in Lehr no notice was given. Here, the mother testified that she had not spoken to the father since she became pregnant and did not know his whereabouts. She also stated that he had not contributed to her needs or the needs of the children in any way. Like New York, Oklahoma has a paternity registry. 10 O.S. 1991 § 55.1.[4] Once a putative father has registered acknowledging paternity, he is be entitled to notice under Section 29.1. Tariah did not file with the Oklahoma Centralized Paternity Registry.
In Matter of Adoption of Baby Boy D, 742 P.2d 1059 (Okla. 1985), cert. denied sub nom., Harjo v. Duello, 484 U.S. 1072, 108 S.Ct. 1042, 98 L.Ed.2d 1005 (1988), this Court relied on Lehr in holding that a putative father was not always entitled to notice of an adoption. There, an unwed father sought to vacate an adoption and to be awarded custody of a child. He urged that statutes which did not require his notification were unconstitutional. We stated that protection is, afforded to biological parents who have formed an emotional bond with their children. We said
After Lehr it is clear that in some circumstances the state may constitutionally omit to notify or allow participation by unwed fathers.... The Constitution protects only parent-child relationships of biological parents who have actually committed themselves to their children and have exercised responsibility for rearing their children.
Id. at 1067. We also recognized the child's need for permanence and stability, especially in early years. "The basis for constitutional protection is missing if the parent seeking it has not taken on those parental responsibilities which provide such permanence and stability." Id. at 1068. We upheld the statutes which did not require notification of the putative father under these circumstances.[5]
The record shows that before the trial court agreed to notice by publication (which *309 was not even required), the paternity registry was checked and no one had registered claiming paternity of the three children. Tariah does not claim to have registered as the biological father of the children. No court had established the paternity of the children. The mother testified that she did not know the identity of the father of the oldest girl and did not know the whereabouts of the father of the twin boys. She stated that she not spoken with the biological father since before the birth of the twins in 1987, and hospital records at the time of their delivery indicate that "no support person" was present. Although Tariah claimed to have had a relationship with the children, Terri in her sworn statement denies any such relationship, and Tariah offered nothing in support of his claim when the matter was heard in the trial court.
We also note that under 10 O.S. 1991 § 1133[6] the termination of Tariah's parental rights is no longer subject to direct or collateral attack, as more than three months have passed since the entry of the termination of rights and the adoption decree. While Section 1133 cannot operate to validate a result reached through unconstitutional means,[7] we have found that the termination of parental rights and the subsequent adoption withstand the constitutional challenge raised by Tariah.
We hold that notice to Tariah was not required, either under our statutes or by the Due Process Clause of the Federal Constitution.[8] In an abundance of caution, the trial court authorized publication notice in order to insure the validity of the adoption of these three children, We need not address the sufficiency of the unnecessary publication notice. The opinion of the Court of Appeals is hereby vacated and the judgment of the District Court is affirmed.
ALMA WILSON, C.J., and HODGES, LAVENDER, SIMMS, SUMMERS and WATT, JJ., concur.
KAUGER, V.C.J., concurs in part, dissents in part.
HARGRAVE and OPALA, JJ., dissent.
NOTES
[1] Terri had another child, who was fathered by her husband, and he has custody of that child.
[2] Terri has not admitted that Solomon Tariah is the father of any of the children. For the purposes of this opinion only we assume that Tariah is the biological father.
[3] Under 10 O.S.Supp. 1993, § 60.6, consent to an adoption is not required from the father or putative father of a child born out of wedlock if:

a. prior to the hearing provided for in Section 29.1 of this title, and having actual knowledge of the birth or impending birth of the child believed to be his child, he fails to acknowledge paternity of the child or to take any action to legally establish his claim to paternity of the child or to exercise parental rights or duties over the child, including failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy....
[4] Section 55.1 reads in relevant part:

The Department of Human Services shall establish a centralized paternity registry which shall record the names and addresses of
1. any person adjudicated by a court of this state to be the father of a child born out of wedlock;
2. any person who had filed with the registry before or after the birth of a child out of wedlock a notice of intent to claim paternity of the child;
3. any person adjudicated by a court of another state or territory of the United States to be the father of a child born out of wedlock. where a certified copy of the court order has been filed with the registry by such person or any other person; and
4. any person who has filed with the registry an instrument acknowledging paternity.
A person filing with the registry is also required to notify the Department if there is an address change.
[5] The Supreme Court also recognized in Quilloin that the best interests of the child must be considered when a putative father  who had not legitimated the child  attempts to block an adoption. 434 U.S. at 256, 98 S.Ct. at 555.
[6] Section 1133 reads in pertinent part:

B. When an interlocutory or final decree of adoption has been rendered, a decree terminating parental rights cannot be challenged on any ground either by a direct or a collateral attack, more than three (3) months after its rendition....
[7] See Matter of Adoption of Lori Gay W., 589 P.2d 217, 220 (Okla. 1979), cert. denied 441 U.S. 945, 99 S.Ct. 2165, 60 L.Ed.2d 1047 (1979).
[8] We note that our holding today is consistent with Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989).