2014 OK CIV APP 31

**Randy PAUL, Plaintiff/Appellant,**

v.

**Renee WILLIAMSON, Defendant,**

**Tony Lopez, Intervenor/Appellee.**

**No. 111787.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

Feb. 21, 2014.

Gregory P. Beben, Legal Aid Services Of Oklahoma, Inc., Oklahoma City, OK, and Richard J. Vreeland, Legal Aid Services Of Oklahoma, Inc., Norman, OK, for Plaintiff/Appellant.

KENNETH L. BUETTNER, Judge.

¶ 1 Petitioner/Appellant Randy Paul appeals the trial court's Order Vacating Order of Custody. Paul acknowledged paternity of A.P. February 8, 2005. Paul was awarded custody of A.P. October 7, 2008. On April 25, 2012, Intervenor/Appellee Tony Lopez filed a petition to vacate the 2008 order of custody pursuant to 12 O.S. 1031(4). Lopez's attempt to challenge Paul's acknowledgment of pater-

nity and vacate the custody order was untimely. Therefore, the trial court abused its discretion by vacating the 2008 custody order. We reverse.

■ ¶ 2 Defendant Renee Williamson discovered she was pregnant while she was dating and living with Lopez in 2004. Williamson was still pregnant when she and Lopez ended their relationship. Williamson began dating Paul. Williamson gave birth to A.P. February 7, 2005. Williamson and Paul were not married when A.P. was born, and Paul knew he was not the child's biological father. However, Paul signed a DHS affidavit acknowledging paternity February 8, 2005, and Paul was named A.P.'s father on the birth certificate. Thereafter, Williamson, Paul, and A.P. lived together in Lawton, Oklahoma, until late–2007.

¶ 3 Paul filed a Petition to Establish Paternity, Custody, Visitation and Support January 22, 2008. Williamson was served, but did not appear. On October 7, 2008, the trial court entered a default judgment against Williamson and awarded Paul custody of A.P. The trial court also awarded Williamson visitation and ordered her to pay child support.

¶ 4 Williamson and A.P.'s whereabouts were unknown until Lopez contacted Paul in the summer of 2009 and told him where Williamson and A.P. were living in Oklahoma City. Lopez contacted Paul after he discovered Williamson and A.P.'s deplorable living conditions. Lopez testified that he contacted Paul because he knew Paul was A.P.'s legal father on the birth certificate. Paul sought a writ of habeas corpus in Oklahoma County July 29, 2009. Williamson was not served, and Paul filed a second petition for a writ of habeas corpus February 22, 2011. A.P. was picked up by the Oklahoma County Sheriff's Department and returned to Paul February 23, 2011. A.P. has been in Paul's physical custody since that time. Lopez has had periodic contact with A.P. throughout her life.

¶ 5 On April 25, 2012, Lopez filed a motion to intervene and a petition to vacate the 2008 order of custody. Lopez alleged he was the natural father of A.P. and that Paul established paternity and obtained custody by fraud. At the time Lopez intervened, A.P. was seven (7) years old. The trial court granted Lopez's motion to intervene August

21, 2012 and held a hearing on the motion to vacate October 18, 2012. After the hearing, the parties briefed the issues. The trial court announced from the bench April 3, 2013 that the Uniform Parentage Act (UPA) did not apply, that Lopez's motion to vacate was timely filed, and that Lopez's due process rights were violated when he was not given notice of Paul's 2008 petition for custody. The trial court granted Lopez's motion and vacated the October 7, 2008 custody order. The trial court entered an Order Vacating Order of Custody April 19, 2013. Paul appeals.

■ ¶ 6 The trial court's decision on a motion to vacate a judgment is reviewed for an abuse of discretion. *Ferguson Enters., Inc. v. H. Webb Enters., Inc.,* 2000 OK 78, ¶ 5, 13 P.3d 480. Paul argues the trial court should have dismissed Lopez's motion to vacate the order of custody, because Lopez filed the motion more than two (2) years after he had notice of the alleged fraud. Paul also argues that Lopez failed to allege or prove any grounds sufficient to vacate a judgment based on fraud and that Lopez should have been estopped from asserting parental rights after failing to assert those rights for seven (7) years.

■ ¶ 7 Lopez has failed to file a response brief. Therefore, this appeal proceeds on Paul's brief only. "Where there is an unexcused failure to file an answer brief, this Court is under no duty to search the record for some theory to sustain the trial court judgment; and where the brief in chief is reasonably supportive of the allegations of error, this Court will ordinarily reverse the appealed judgment with appropriate directions." *Cooper v. Cooper,* 1980 OK 128, ¶ 6, 616 P.2d 1154; Okla.Sup.Ct.R. 1.10. However, "[r]eversal is never automatic on a party's failure to file an answer brief." *Enochs v. Martin Props., Inc.,* 1997 OK 132, ¶ 6, 954 P.2d 124. If "the record presented fails to support the error alleged in the brief of the party who lost below, the decision to be reviewed cannot be disturbed. It is presumed correct until the contrary is shown by the record." *Id.*

¶ 8 The UPA went into effect November 1, 2006, which was after Paul executed the acknowledgment of paternity February 8, 2005.

According to the UPA "[a] proceeding to adjudicate parentage or an acknowledgment of paternity which was commenced or executed *before* November 1, 2006, is governed by the [UPA]." 10 O.S.Supp.2006, 7700–902 (emphasis added). "[A] valid acknowledgment of paternity signed by both parents is equivalent to an adjudication of paternity of a child and confers upon the acknowledged father all of the rights and duties of a parent." *Id.* 7700–305(A). Paul signed the acknowledgment of paternity February 8, 2005. At that point, Paul became A.P.'s acknowledged father. Section 7700–609 of the UPA provides, in pertinent part:

> If a child has an acknowledged father or an adjudicated father, an individual, other than the child, who is neither a signatory to the acknowledgment of paternity nor a party to the adjudication and who seeks an adjudication of paternity of the child shall commence a proceeding not later than two (2) years after the effective date of the acknowledgment or adjudication.

10 O.S. 7700–609(B). Lopez is an individual, other than the child, who is not a signatory to the acknowledgment of paternity and is seeking an adjudication of paternity. Lopez commenced this proceeding April 25, 2012. The effective date of Paul's acknowledgment of paternity was February 8, 2005. Lopez sought adjudication more than two (2) years after the effective date of Paul's acknowledgment. Under the UPA, Lopez's opportunity to challenge Paul's acknowledgment of paternity expired in February 2007.

 ¶ 9 Prior to the adoption of the UPA, 10 O.S. 70 provided that if more than sixty days have passed since the signing of the statement acknowledging paternity, "a signed voluntary acknowledgment of paternity may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger." 10 O.S.Supp.2005 70 (repealed by Laws 2006, HB 2967, c. 116, 62, eff. November 1, 2006). Section 70 did not contain a time limitation, but according to 12 O.S.2001 1038, a proceeding to vacate an order based on fraud pursuant to 12 O.S.2001 1031(4) must be commenced within two (2) years after the filing of the order.

¶ 10 The facts in this case are strikingly similar to the facts in the pre-UPA case *Hill v. Blevins,* 2005 OK 11, 109 P.3d 332. While Howard Hill and Diane Blevins were living together, Blevins used a home pregnancy test to confirm she was pregnant. *See id.* ¶ 4. When Blevins was six months pregnant, she ended the relationship with Hill. *See id.* ¶ 5. When Blevins gave birth September 23, 1997, Hill was incarcerated. *See id.* ¶ 6. Blevins alleged that David Sawyer was the father. *See id.* Paternity was established by an affidavit signed by Blevins declaring David Sawyer to be the father. *See id.* ¶ 7. Six years later, Hill filed a petition to establish paternity and a motion to vacate the affidavit declaring Sawyer to be the father. *See id.* ¶ 2, ¶ 11. The Supreme Court of Oklahoma applied 12 O.S. 1031 and 1038. The Court recognized that because a statement acknowledging paternity has the same legal effect as an order in a court, the district court has the power to vacate such an order for fraud practiced by the successful party. *See Hill,* 2005 OK 11, ¶ 10, 109 P.3d 332 (citing 12 O.S.2001 1031(4)). The Court explained:

> Section 1038 is a general statute of limitation applicable to proceedings brought under 1031. With regards to subsection 4, where the complaining party alleges that an order has been obtained by fraud, proceedings to vacate that order must be commenced within two years after the order was made. The complaining party need not have actual notice of the fraud. Constructive notice of fraud from public records, required by law to be kept, is sufficient to set the statute of limitations in motion.

*Hill,* 2005 OK 11, ¶ 10, 109 P.3d 332. The Supreme Court held that Hill's paternity suit was time-barred:

> Hill is chargeable with knowledge that a positive pregnancy test administered on December 25, 1996, is likely to be followed by the birth of a child approximately forty weeks later, that is, around September 30, 1997. D.S. was born September 23, 1997. Instead of making inquiry about the birth, the issuance of a birth certificate, or matters of support and visitation, Hill waited until the child was almost six years old before he filed suit. The means of discovery of the alleged fraud were no less avail-

able to Hill in the fall of 1997 than they were five years later in June of 2002. So, even if Blevins' naming of Sawyer as the father was false, means of discovering the alleged fraud were readily available to Hill any time from and after the issuance of the birth certificate on October 17, 1997, expiring two years later in October of 1999. This suit, filed nearly four years subsequent, July 2003, was correctly found to be time-barred by the trial court.

*Id.* ¶ 11.

¶ 11 Paul acknowledged paternity February 8, 2005. Because an acknowledgment of paternity has the same legal effect as an order in a court, the district court has the power to vacate such an order for fraud practiced by the successful party. *See Hill,* 2005 OK 11, ¶ 10, 109 P.3d 332 (citing 12 O.S.2001 1031(4)). Where the complaining party alleges that an order has been obtained by fraud, proceedings to vacate that order must be commenced within two (2) years after the order was made. 12 O.S. 1038. Lopez has been chargeable with knowledge of his biological child since February 2005. It is undisputed that Lopez always believed he was A.P.'s biological father, and Paul always believed he was not A.P.'s biological father. Lopez also testified that he learned of A.P.'s birth a few days after delivery and that he has known since then that Paul's name was on her birth certificate. The means of discovering the alleged fraud were no less available to Lopez in February 2005 than they were in April 2012. Lopez waited until the child was seven (7) years old to intervene, seek vacation of the 2008 custody order, and seek to establish paternity. Therefore, based on the Oklahoma Supreme Court's interpretation of pre-UPA law in *Hill,* Lopez's paternity action is time-barred.[1]

¶ 12 We also note that the October 7, 2008 custody order did not establish paternity.

Paternity had been previously established by the acknowledgment of paternity signed by Paul February 8, 2005. The trial court remarked in the October 7, 2008 custody order that Paul "was previously found to be the father of the minor child. [Paul] signed on February 8, 2005, a DHS affidavit acknowledging being the father of the minor child. No objection has been filed." The trial court then awarded sole custody to Paul. A proceeding to vacate an order for fraud practiced by the successful party in obtaining the order must be commenced within two (2) years of the filing of the order. *See* 12 O.S. 1031(4), 1038. The opportunity to vacate the October 7, 2008 order of custody expired in October 2010. Lopez commenced this proceeding in 2012.

¶ 13 Even if Lopez had standing to intervene and the motion to vacate was timely filed, only the custody, visitation, and child support orders were subject to vacation. Paternity was established in February 2005, not in the October 2008 order. As previously discussed, no objection was made to Paul's acknowledgment of paternity within two (2) years. Furthermore, Lopez failed to prove the necessary elements for vacation based on fraud.

[I]n a proceeding under 1031 to vacate an earlier judgment on the grounds of fraud, the petitioner must: (1) show that he (or she) acted without delay in asserting his (or her) rights after discovering the fraud, (2) establish that he (or she) used diligence in the original action in trying to discover and expose the fraud, (3) provide clear and convincing evidence of the fraud, and (4) demonstrate that there is a substantial likelihood that a new trial will have a different result.

*Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶ 38, 987 P.2d 1185. Lopez did not act

---

1. In *Sprowles v. Thompson,* 2010 OK CIV APP 80, 239 P.3d 981, Division IV of the Oklahoma Court of Civil Appeals determined that 10 O.S.Supp.2006 7700–308 was a statute of repose, rather than a statute of limitations. The court explained that because 7700–308 cut off the right of an acknowledged father to challenge the acknowledgment based on fraud after two (2) years, whether or not the acknowledged father had discovered the alleged fraud, it was a statute of repose and could not be applied retroactively.

*See id.* ¶ 14–16. Division IV distinguished *Sprowles* from *Hill* because "the Oklahoma Supreme Court did not cite or otherwise apply 70 in reaching its decision" in *Hill. Id.* ¶ 21. In *Sprowles,* Division IV held that the more specific 70 controlled over the more general provisions of 12 O.S. 1031, 1038. *See id.* We note that the Supreme Court did acknowledge 70 in *Hill. See Hill v. Blevins,* 2005 OK 11, ¶ 8, 109 P.3d 332. We will follow mandatory Supreme Court authority on this issue.

without delay in asserting his rights after discovering the alleged fraud, and he did not provide clear and convincing evidence that Paul committed fraud. Lopez has had notice of the alleged fraud since February 2005. Paul did not misrepresent the facts to obtain custody in 2008. Statutorily, paternity had been established in favor of Paul when his 2005 acknowledgment of paternity went unchallenged. Therefore, Paul's statement that "[n]o person or party other than the parties hereto has or claims to have any custody or visitation rights concerning the parties' minor child" was legally correct.

¶14 The trial court determined that in 2008, Paul had a duty to notify the trial court that Lopez was the "natural" father and to notify Lopez that he was seeking custody. Such duty does not exist. The Supreme Court explained in *Hill* that "[t]he significance of the biological connection of a father to a child is that it gives the father an opportunity to develop a relationship with the child. A trial judge or a litigant is not required to give special notice to a nonparty who is presumptively capable of asserting and protecting his own rights." *Hill*, 2005 OK 11, ¶12, 109 P.3d 332 (citing *Matter of C.J.S.*, 1995 OK 70, ¶16, ¶17, 903 P.2d 304). Lopez admitted that he always believed he was A.P.'s biological father and that since her birth, he knew Paul was named on the birth certificate as her legal father. Lopez took no action to assert his rights until the child was seven (7) years old. Paul, in exercising his right to custody as the legal father of A.P., was not required to notify Lopez. Lopez had the knowledge and a window of opportunity to assert parental rights but failed to do so, resulting in the extinguishment of his rights.

¶15 We hold the trial court abused its discretion by vacating the October 7, 2008 order of custody.

¶16 REVERSED.

JOPLIN, P.J., and HETHERINGTON, V.C.J., concur.